# OPINIONS OF THE JUSTICES.

## OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* Initiative. *General Court. Governor. Words,* "Enact."

A law proposed by initiative petition and introduced into the General Court pursuant to art. 48 of the Amendments to the Constitution, The Initiative, as amended by arts. 74 and 81, upon enactment must be laid before the Governor for his approbation [873-874]; the Governor may approve or veto the proposed law before the first Wednesday of May, but not thereafter [874]; and the General Court may act on a timely veto before the first Wednesday of May, but not thereafter [875].

Under art. 48 of the Amendments to the Constitution, The Initiative III, § 2, the General Court, before or after the first Wednesday of May, may act on a legislative substitute for a measure introduced by initiative petition. [876-877]

Under art. 48 of the Amendments to the Constitution, The Initiative III, § 2, a legislative substitute for a measure introduced by initiative petition, and the measure so introduced, may not be submitted to the people in the absence of the additional signatures on the initiative petition required by The Initiative V, § 1, as amended by art. 81, § 2. [877-878]

On April 29, 1976, the Justices submitted the following answers to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the Senate on April 20, 1976, and transmitted to the Justices on the same day. The order recites that there is pending before the General Court, under the provisions of art. 48 of the Amendments to the Constitution of the Commonwealth, an initiative petition (printed as House No. 4201) entitled "An Act to lower electric bills

for residential customers, small businesses, and other small users by establishing fair share rates by requiring electric companies to charge a uniform rate per kilowatt hour." The petition has been referred to the Committee on Government Regulations.

The order further recites, "Grave doubt exists as to the authority, powers and procedure of the General Court in the enactment of such Initiative Petition into law . . ." and propounds the following questions:

"1. Does House No. 4201 once enacted by the General Court require transmittal to the Governor for his approbation?

"2. If the answer to the first question is in the affirmative, does the Governor have the right to veto such initiative measure within the time provided by the Constitution for action by the General Court, namely, the first Wednesday of May? May he veto such measure after said date?

"3. If the Governor has a right to veto such initiative measure, is there a time period within which the General Court must act upon such veto? May the General Court act on the veto subsequently to the first Wednesday of May?

"4. May the General Court act on a legislative substitute after the first Wednesday in May?

"5. If, by resolution, the General Court votes to submit to the people a substitute for the Initiative Petition, in the absence of the additional signatures required by Section 1 of Part V of Article XLVIII of the Amendments, will such legislative substitute and the measure introduced by Initiative Petition be submitted to the people under the provisions of Section 2 of Part III of said Article XLVIII?"

In response to our invitation for briefs from interested persons, a joint brief was filed by the counsel to the Senate and the counsel to the House of Representatives and a brief was filed by Massachusetts Fair Share, Inc., and by Norman L. Pidgeon, consultant to the Senate.

The procedure for passage of a law by initiative petition

is set forth in art. 48. We summarize here so much of the
procedure as is necessary to an understanding of the issues
raised. A petition, signed by ten qualified voters of the
Commonwealth, may be filed with the Secretary of the
Commonwealth seeking passage of a proposed law, the text
of which must be set forth in the petition. The Initiative,
II, §§ 1, 3.[1] Thereafter, there must be filed with the Secre-
tary signatures of voters aggregating not less than three
per cent of the vote cast for Governor at the preceding
biennial State election. The Initiative, V, § 1. The Secre-
tary then must transmit the petition to the clerk of the
House of Representatives. The Initiative, II, § 4. There the
petition is referred to a committee which, after hearing,
reports thereon to the General Court with its recommenda-
tions. The Initiative, III, § 1. Since the legislative proce-
dure following this step is particularly relevant to our
inquiry, we set it out verbatim: "a vote shall be taken by
yeas and nays in both houses before the first Wednesday
of May upon the enactment of such law in the form in
which it stands in such petition. If the general court fails
to enact such law before the first Wednesday of May, and
if such petition is completed by filing with the secretary of
the commonwealth, not earlier than the first Wednesday
of the following June nor later than the first Wednesday of
the following July, a number of signatures of qualified
voters equal in number to not less than one half of one
per cent of the entire vote cast for governor at the preced-
ing biennial state election, in addition to those signing
such initiative petition, which signatures must have been
obtained after the first Wednesday of May aforesaid, then
the secretary of the commonwealth shall submit such pro-
posed law to the people at the next state election. . . ." The
Initiative, V, § 1.

In the event that the General Court fails to "enact" a
proposed law before the first Wednesday of May, a ma-
jority of the first ten signers of the petition may amend

---

[1] Unless otherwise indicated, all references are to art. 48, as amended
by arts. 74 and 81.

the proposed law, subject to the Attorney General's certification that the amendment is "perfecting in its nature and does not materially change the substance" of the proposed law. The Initiative, V, § 2. The amended petition must be filed with the Secretary before the first Wednesday of the following June; it will be then submitted to the people in its amended form if the necessary additional signatures have been obtained. The Initiative, V, § 2. The General Court may by resolution submit to the people a substitute for the law proposed in the petition; the substitute is to be grouped with the proposed law as an alternative therefor. The Initiative, III, § 2.

1. The first question is whether a law proposed by initiative petition and passed by the General Court must be laid before the Governor for his approbation. Article 48 provides in relevant part that both houses shall vote "upon the enactment" of the proposed law; if the General Court "fails to enact" the law before the first Wednesday of May, and the necessary additional signatures are filed, the Secretary shall submit the proposed law to the people at the next State election. The words "enactment" and "enact" are sometimes used to refer to legislative action only. See *Opinion of the Justices,* 300 Mass. 630, 640 (1938), where we determined that the "words 'enact' and 'enacted' as used in art. 63, §§ 3, 4, of the Amendments refer solely to legislative action." However, those words, or variations thereof, are also used to indicate not only action by the Legislature but also approval by the Governor. See G. L. c. 3, § 23; c. 4, § 1. See also *Stadle* v. *Battle Creek,* 346 Mich. 64, 68-69 (1956). Thus, unless the intended meaning of the words is plain from the context in which they are used, we must look to the purpose of the provision where they appear to determine their meaning.

The fundamental purpose of art. 48 is to provide a procedure by which the people can enact legislation by popular vote. The article sets out in detail the steps that must be taken to get a proposed law on the ballot. This procedure, however, is an extraordinary method for enacting legislation. It is cumbersome and lacks many of the safeguards

built into the normal legislative process. 2 Debates in the Massachusetts Constitutional Convention, 1917-1918, at 3-15 (1918). The framers were well aware of this and provided in the first sentence of the article, "Legislative power shall continue to be vested in the general court . . . ." The Initiative, I. There is no evidence in art. 48 that would indicate an intent to render inapplicable to laws proposed by initiative petition other relevant constitutional provisions. See *Commonwealth* v. *Higgins*, 277 Mass. 191, 193 (1931). Exercise by the General Court of its right under art. 48 to vote to enact a proposed law renders unnecessary the submission of the measure to the people. *Opinion of the Justices*, 318 Mass. 793, 795 (1945). We think a law not so submitted cannot take effect without compliance with the constitutional requirement that laws passed by the General Court must be laid before the Governor. Mass. Const., pt. 2, c. 1, § 1, art. 2, as amended. The role of the Governor in the legislative process is basic to our system of government. Article 48 authorizes adoption of a law by direct vote of the people, if it is approved by voters equal to at least thirty per cent of the total number of ballots cast and by a majority of those voting on the law. The Initiative, V, § 1. Such a vote bypasses the important constitutional requirement that the Governor approve all laws, but it cannot reasonably be said that the framers intended to permit circumvention of the Governor's constitutional role by vote of the General Court alone on a law proposed by three per cent of the votes cast for Governor at the preceding State election. The Initiative, V, § 1.

Further support for our views is found in the provision in art. 48 declaring, "The limitations on the legislative power of the general court in the constitution shall extend to the legislative power of the people as exercised hereunder." The Initiative, II, § 2. This declaration is additional evidence that the framers had no intention of expanding the legislative power of the General Court when dealing with a measure introduced by initiative petition.

Our conclusion, based on our interpretation of art. 48,

is reinforced by the legislative practice of sending to the Governor for approval laws proposed by initiative petition. Procedural Manual for the General Court 40-41 (1974). For an example of a law introduced by initiative petition, enacted by the General Court, and approved by the Governor, see St. 1950, c. 478. Cf. *Opinion of the Justices,* 318 Mass. 793, 798-799 (1945).

We answer question 1 in the affirmative.

2. The second "question" consists of two questions. The first has two parts. The first part asks whether the Governor has the right to veto a law proposed by initiative petition. On the basis of our answer to question 1, we answer in the affirmative. If the constitutional provisions setting forth the rights and duties of the Governor in the legislative process apply to a law proposed by initiative petition and passed by the General Court, it follows that the Governor may take any action allowed by the Constitution and not clearly prohibited by art. 48.[2]

Article 48 provides: "The veto power of the governor shall not extend to measures approved by the people." General Provisions, V. But it does not prohibit the exercise of such power with regard to laws proposed by initiative petition and enacted by the General Court.

The second part asks whether the Governor must exercise his veto power with regard to the proposed law before the first Wednesday in May, the time limitation for enactment of a law proposed by initiative petition. We are of opinion that the deadline for enactment by the General Court applies to approval or veto by the Governor and to a vote of the General Court to override a veto. This conclusion helps effectuate the dominant intent of art. 48 to submit initiative measures to the people for a vote.

---

[2] One constitutional option not open to the Governor is to return the proposed law with recommendations for amendments under art. 56 of the Amendments to our Constitution for the authority of the General Court under art. 48 to pass a law proposed by initiative petition is limited to enactment of such law "in the form in which it stands in such petition." The Initiative, V, § 1. See Procedural Manual for the General Court 39-40 (1974).

What we said in *Opinion of the Justices*, 318 Mass. 793 (1945), applies with equal force here. There we were asked whether the Senate could vote on a law proposed by initiative petition after the deadline for enactment fixed by The Initiative, V, § 1.[3] We answered in the negative: "Whether or not the General Court has failed to enact a proposed law must be determined as of some date. By the express terms of the constitutional provision that date is fixed as the first Wednesday of June [now May]." *Id.* at 796-797. Part of the basis for our conclusion there was that the deadline for the General Court's passing the proposed law was fixed to permit sufficient time for the taking of the additional steps to have the initiative measure appear on the ballot at the next State election. If a proposed law is not enacted by the General Court, then the petition must be completed "by filing with the secretary of the commonwealth, not earlier than the first Wednesday of the following June nor later than the first Wednesday of the following July" signatures equal to not less than one-half of one per cent of the vote cast for Governor in the preceding State election, "which signatures must have been obtained after the first Wednesday of May . . . ." The Initiative, V, § 1. Furthermore, the date is also fixed with reference to when a majority of the first ten signers of the petition may amend the initiative petition. The Initiative, V, § 2. Thus, in order to give effect to these provisions, which set forth a timetable for taking the steps necessary to have a proposed law placed on the ballot, we conclude that all constitutional steps for passage of a law, including the Governor's approbation or legislative action after veto of the measure, must occur before the first Wednesday of May. If final action has not been taken before then, the General Court has failed to enact the law.

We answer both parts of the first question in question 2 in the affirmative. The second question in question 2 asks

---

[3] At the time, the deadline was "before the first Wednesday of June." This was amended in 1950 by art. 81 of the Amendments to read "before the first Wednesday of May."

whether the Governor may veto an initiative measure after the first Wednesday of May. To this inquiry we answer in the negative.

3. Question 3 consists of two questions. The first question asks whether there is a time period within which the General Court must act on the Governor's veto of an initiative measure. We answer in the affirmative for the reasons given in response to question 2. The second question asks whether the General Court may act on the veto after the first Wednesday in May. For the reasons set forth in answer to question 2, we respond in the negative.

4. Question 4 inquires whether the General Court may act on a legislative substitute after the first Wednesday of May. The provision in art. 48 authorizing legislative substitutes provides in material part: "The general court may, by resolution passed by yea and nay vote ... submit to the people a substitute for any measure introduced by initiative petition, such substitute to be designated on the ballot as the legislative substitute for such an initiative measure and to be grouped with it as an alternative therefor." The Initiative, III, § 2. There is no requirement in this or any other provision that the General Court must act on a legislative substitute before the first Wednesday in May. Such a requirement would severely limit the important role the General Court plays in the process of adopting laws through the initiative process. Nothing in The Initiative, V, § 1, which sets the deadline for enactment of the initiative measure by the General Court, mandates such a result. Indeed, no mention is made in that provision about legislative substitutes. Nor is the dominant purpose of art. 48, preservation of the people's right to adopt laws by direct vote, thwarted by our conclusion. The sponsors of an initiative petition are free to gather the necessary additional signatures to have their measure placed on the ballot. To be sure, they may not know prior to filing the additional signatures whether a legislative substitute will be placed on the ballot with their proposed law. However, we are powerless to add language to the constitutional amendment. "Since the people have them-

selves adopted the Constitution with its amendments for their government they are bound by the provisions and conditions which they themselves have placed in it, and when they seek to enact laws by direct popular vote they must do so in strict compliance with those provisions and conditions." *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 320-321 (1951).

We are aware that the committee to which the initiative petition is referred often recommends a substitute, which is included in the committee's recommendations on the initiative measure and acted on at the same time. See Legislative Procedure In the General Court of Massachusetts 70-71 (1973). But this convenient practice does not support the view that the legislative substitute is subject to the same constitutional time limit expressly fixed for the initiative measure. In fact, one Senate president ruled to the contrary. 1938 Senate Journal 1029.[4]

We answer question 4 in the affirmative.

5. Question 5 asks whether an initiative measure and a legislative substitute can be submitted to the people in the absence of the additional signatures required by The Initiative, V, § 1. This question is not presently pending, and we doubt whether it presents a solemn occasion, but since the answer seems clear we express our opinion. The language of that provision is clear, unequivocal, and mandatory. The obligation and authority of the Secretary to submit a law proposed by initiative petition to the people for a vote do not arise unless the petition is completed by filing with the Secretary the additional signatures. See *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, 97 (1926). We cannot say that this important step in the carefully fashioned scheme for the adoption of laws by

---

[4] The president of the Senate ruled as follows: "Although the Constitution requires that a vote be taken by yeas and nays on the original initiative law in the form in which it stands in the petition before the first Wednesday in June, the Chair is of the opinion that it is not necessary to take final action on a legislative substitute before the above mentioned date, and that action may be taken on a resolution for a legislative substitute at any time it may come before the Senate."

popular vote can be omitted unless there is an equally clear and unequivocal command so dictating. We have examined art. 48 and have found none. The provision authorizing the General Court to act on a legislative substitute is also clear: it specifies that if the General Court passes a resolution for a legislative substitute, the substitute is to be "designated on the ballot as the legislative substitute for such an initiative measure" and is to be "grouped with it as an alternative therefor." The Initiative, III, § 2. The obvious intent was to allow the General Court the opportunity to submit to the people an *alternative* to the initiative measure. The provision must be read with The Initiative, V, § 1, requiring the filing of additional signatures for an initiative measure to be placed on the ballot. We express no opinion, however, as to the effect of action by the General Court, in the exercise of its ordinary legislative authority, dealing with the same subject.

We answer question 5 in the negative.

In summary, we answer:

question 1, "Yes";

question 2, "Yes" to both parts of the first question; "No" to the second question;

question 3, "Yes" to the first question; "No" to the second question;

question 4, "Yes";

question 5, "No."

EDWARD F. HENNESSEY
PAUL C. REARDON
FRANCIS J. QUIRICO
ROBERT BRAUCHER
BENJAMIN KAPLAN
HERBERT P. WILKINS