OPINION OF THE JUSTICES TO THE GOVERNOR.

*Constitutional Law*, General Court, Governor. *General Court. Governor. Public Welfare.*

Proposed legislation which would have required the Secretary of the Executive Office of Human Services to submit "for approval by each branch of the General Court" the plans of any department of the Commonwealth to alter specific public benefit programs as a result of changes in Federal law, and which provided that "[n]o such plan shall be implemented without prior approval by the general court," either by action or failure to act within a 120-day period would, if enacted, be an infringement on the Governor's veto power as secured by Part II, c. 1, § 1, art. 2, of the Massachusetts Constitution. [843-847]

On December 24, 1981, the Justices submitted the following answers to questions propounded to them by the Governor.

To His Excellency, the Governor of the Commonwealth:

The undersigned Justices of the Supreme Court respectfully reply to the questions set forth in the Governor's request dated December 17, 1981, and transmitted to the Justices on the same day.

The Governor's request states, in substance, as follows: On December 3, 1981, there was laid before the Governor for approval Senate Bill No. 2335, entitled, "An Act requiring legislative approval of Federal options which substantially change public benefit programs." A copy of the bill was transmitted with the request. On December 15, 1981, the Governor returned the bill to the General Court recommending certain amendments. A copy of the Governor's communication to the General Court setting out his proposed amendments and reasons therefor was also transmitted to the Justices. The General Court reenacted the bill in its

original form and on December 16, 1981, laid it before the
Governor for action.

We summarize the provisions of Senate No. 2335. The
bill, if enacted, would add § 16A to G. L. c. 6A. The new
section would require (regardless of contrary provisions of
law) submission to the Secretary of the Executive Office of
Human Services of any plans by a department of the Com-
monwealth which alter specified public benefit programs[1]
"and which reduce or terminate the benefits to groups or in-
dividuals, or which . . . [alter] the existing conditions of
eligibility for any of said programs and which arise from a
change in federal law . . . ." All such plans (except those
arising from a change in Federal law mandating a corre-
sponding program change) would have to be submitted by
the Secretary to the Clerk of the House of Representatives
and the Clerk of the Senate "for approval by each branch of
the general court." In addition, the new section would re-
quire that each plan so submitted be accompanied by an
"impact statement" which, in the main, would set forth fis-
cal data.[2]

---

[1] The programs specified in the bill are those administered under the
provisions of G. L. c. 18 (requiring the Department of Public Welfare to
provide and administer a comprehensive public welfare financial assist-
ance program); G. L. c. 18B (requiring the Department of Social Services
to provide and administer a comprehensive social service program); G. L.
c. 115 (providing for the administration of veterans' services); G. L.
c. 118 (requiring the Department of Public Welfare to provide financial
aid to eligible families with dependent children); G. L. c. 118A (requir-
ing the Department of Public Welfare to administer a program of finan-
cial assistance for the aged and disabled); G. L. c. 118E (establishing a
program of medical care and assistance for certain residents); and G. L.
c. 119 (imposing on the Department of Social Services various duties with
respect to the protection and care of children, including financial respon-
sibility for foster care of children). Virtually all the programs governed
by these statutes are funded in part by the Federal government.

[2] The section provides that the impact statement "shall specify the nature
and goals of the changes proposed by said plan, the number of recipients
of assistance who shall be affected by said plan and the nature of such ef-
fects, any alteration in personnel staffing levels or governmental structure
necessary to implement said plan, an itemization of expected changes in
expenditures detailing the extent to which such expenditures are currently

The bill provides that: "No such plan shall be implemented by any department without prior approval by the general court." Any submitted plan not approved or disapproved within 120 days of presentation to the General Court shall be deemed approved. Excluded in the calculation of the 120-day period would be days during recess or days between prorogation of one annual session of the General Court and the convening of the next session. An emergency preamble appears in the bill and declares that the purpose of the measure is "to immediately grant to the general court the authority to approve the election of options under federal law for public benefit programs . . . ."

When he returned the bill on December 15 the Governor suggested deletion of the requirement that plans be approved by the General Court and proposed the substitution of a requirement that only notice of such plans be given to the Legislature.[3] In the Governor's message to the Legislature explaining the proposed amendments, he noted that the act as he proposed it be adopted would give the General Court an active role in developing policies relating to federally subsidized welfare programs. While he recognized that the requirement of submitting an impact statement was "an appropriate and legitimate legislative mandate," the Governor stated that Senate No. 2335 would "make policy in a manner that would immunize the legislative action from the executive veto." Moreover, the Governor stated that the bill

and would, under such plan, be federally reimbursable, and a statement regarding conformity of such plan with existing federal laws."

[3] The Governor's version of the bill would also omit G. L. c. 18 (welfare) and G. L. c. 118A (assistance for the aged) from its coverage.

In lieu of the approval mechanism in the bill, the Governor offered the following: "No such plan shall be implemented by any department before a forty-five (45) day period has elapsed beginning with the date of submission to the clerks of the house of representatives and the senate. If the secretary determines that the forty-five (45) day notice period would result in a potential loss of federal revenue, would render the state out of compliance with federal law, or subject the commonwealth to other sanctions, he may submit a recommendation to the president of the senate and the speaker of the house of representatives that the notice requirement be shortened in the best interests of the commonwealth."

would violate the doctrine of separation of powers by giving the Legislature "an ongoing right of prior approval as to the manner in which a program is executed." Finally, the Governor stated that "[t]o hold up the plan until prior legislative approval is received . . . would be an unconstitutional impairment of the executive prerogative."[4]

In the Governor's request for the Justices' opinion, he states that Senate No. 2335 raises serious questions regarding "the constitutionally separate roles of the executive and legislative branches of the government of the Commonwealth" and "the elimination of the Governor's constitutional veto power . . . ." Uncertain of the constitutionality of the bill, if enacted into law, the Governor seeks the opinion of the Justices on the following questions:

> "1. Would enactment of S. 2335 constitute either an unconstitutional exercise of legislative power or an unconstitutional abrogation of the Governor's veto power as ensured by Part II, c. 1, § 1, art. 2 of the Massachusetts Constitution?
>
> "2. Would enactment of S. 2335 constitute an unconstitutional encroachment by the legislative branch into powers reserved under Article XXX of the Declaration of Rights of the Massachusetts Constitution to the executive branch?"[5]

1. The first question is in two parts. The first part asks whether the bill, if enacted, would result in an unconstitutional exercise of legislative power. The second part inquires

---

[4] The Governor noted that under the bill "a program filed after a July prorogation could be suspended for nine months . . . ."

[5] We invited interested persons to submit briefs on the issues raised in the Governor's request. Briefs were received from the Governor and The Coalition for Basic Human Needs (an organization composed primarily of persons interested in the improvement in the level of subsistence benefits and an increase in the opportunities for welfare recipients to become self-sufficient).

whether the bill, if enacted, would work an abrogation of the Governor's constitutionally protected veto power. We answer the second part of the question in the affirmative and, therefore, respectfully ask to be excused from answering the first part.

It is undisputed that the lawmaking power is within the prerogative of the Legislature. *Opinion of the Justices*, 375 Mass. 827, 833 (1978). "The Constitution grants to the Legislature full power to make laws, consistent with the Constitution, as the Legislature 'shall judge to be for the good and welfare of this Commonwealth, and for the government and ordering thereof, and of the subjects of the same, and for the necessary support and defence of the government thereof.' Part II, c. 1, § 1, art. 4. Thus, the power to order social priorities, and to focus the energies of society into the accomplishment of designated objectives or programs is entrusted to the Legislature through the enactment of laws according to prescribed procedures. See Part II, c. 1, § 1, art. 2, of the Constitution; art. 1 of the Amendments; art. 56 of the Amendments; art. 63, § 5 of the Amendments. Cf. art. 48 of the Amendments (popular initiative and referendum)." *Id.* at 832. "[I]t is for the Legislature, and not the executive branch, to determine finally which social objectives or programs are worthy of pursuit." *Id.* at 833.

"This decidedly is not to say that the Governor does not have a role to play in determining social goals and priorities. He may propose legislation . . . . [Also the] Constitution provides that the Governor may veto any bill or resolve presented to him for his signature, and return it to the Legislature with his written objections or with recommended amendments. The Governor may exercise the veto power because he feels that the proposed legislation is unwise, or for another reason, and a vote of two-thirds of both houses of the General Court will be required to enact the bill notwithstanding the Governor's objections. Part II, c. 1, § 1, art. 2. Art. 56 of the Amendments." *Id.* at 834. Our system contemplates action by both the legislative and executive branches

before a bill may be enacted into law. Amendments to existing legislation also follow this procedure. *Id.* at 837-838.

In enacting legislation, the Legislature may delegate to the executive branch the authority to determine how best to accomplish a declared legislative policy. In the *Opinion of the Justices*, 368 Mass. 831 (1975), the Justices concluded that the Legislature could constitutionally delegate to the Department of Public Welfare authority to determine eligibility requirements under G. L. c. 117, and to provide financial assistance for medical care or services in excess of the Federal requirements under G. L. c. 118E.[6] The Legislature's decision to delegate such authority is wholly consistent with the constitutional principle that the Governor "is bound to apply his full energy and resources, in the exercise of his best judgment and ability, to ensure that the intended goals of legislation are effectuated." *Opinion of the Justices*, 375 Mass. at 834.[7]

---

[6] The Legislature has granted considerable discretion to executive departments responsible for administering the programs to determine eligibility and benefits levels. See, e.g., G. L. c. 18, § 2 (charging the Department of Public Welfare with the responsibility of providing and administering "a comprehensive public welfare financial assistance program" and formulating "the policies, procedures and rules necessary for the full and efficient implementation of programs authorized by the laws of the commonwealth and federal laws in the area of public welfare"); G. L. c. 118A, § 1 (requiring the Department of Public Welfare to administer "a program of financial assistance for aged and disabled persons" and directing the department to establish "standard levels for state supplementary payments for the aged and disabled"); G. L. c. 118E, §§ 1 and 9 (establishing "a program of medical care and assistance for certain residents of the commonwealth" and authorizing the Department of Public Welfare to determine eligibility of applicants); and G. L. c. 18B, §§ 2 and 4 (charging the Department of Social Services with the responsibility of providing and administering "a comprehensive social service program" of designated services and empowering the department to "develop regulations defining standards of needs and priorities for the allocation of social services").

[7] The Legislature may take back powers previously delegated by amending the appropriate statutes. Such an amendment would, of course, be subject to the Governor's veto.

The Legislature could, if it chose, reserve to itself the authority to prescribe in minute detail the social policies which best meet the needs of the Commonwealth. Such legislative policies can be established by the enactment of appropriate legislation. However, "[n]o bill or resolve of the senate or house of representatives shall become a law, and have force as such, until it shall have been laid before the governor for his revisal." Part II, c. 1, § 1, art. 2, of the Massachusetts Constitution.[8] Whichever choice is made by the Legislature, the executive and legislative branches are both active participants in the process.

The critical inquiry is whether the effect of the approval procedure in Senate No. 2335 impermissibly infringes on the Governor's veto power. The proposed act would require approval by both branches of the General Court either by action or by failure to act within the 120-day period (as defined in the bill) before any plan could be implemented. The legislative mechanism applies to plans which alter public benefit programs administered under various provisions of the General Laws and which, due to changes in the Federal law, would "reduce or terminate" benefits or alter "the existing conditions of eligibility for any of said programs . . . ." (Excluded from the approval mechanism would be plans arising from changes in Federal law requiring conforming legislation.) There is no provision for gubernatorial action if the plan is disapproved; we assume none is intended.[9] "What this . . . proposed [act] attempts to do is to provide an open-ended means of regulating the conduct of members of the executive branch according to the consensus of the Houses of the Legislature as evidenced by resolutions

[8] The Governor suggests that the Legislature could require the executive branch to give it reasonable notice before implementing an alternative plan. Before the plan became effective, the Legislature could enact legislation amending or prohibiting the plan if it so chose.

[9] It is not clear from Senate No. 2335 what occurs after a plan is disapproved by either branch of the Legislature. Under the proposed act it is possible that the Legislature and the Governor could become deadlocked, thus disabling on-going social programs. Viewed in this light the need to follow the constitutional scheme becomes particularly clear.

enacted at unspecified times in the future." *Opinion of the Justices*, 375 Mass. at 837-838. The undersigned Justices believe that such a procedure would violate Part II, c. 1, § 1, art. 2, of the Massachusetts Constitution.

Accordingly, we answer the second part of question 1 in the affirmative and ask to be excused from answering the first part.[10]

2. In view of our determination that Senate No. 2335, if enacted, would impermissibly interfere with the Governor's constitutionally protected veto power, we beg to be excused from answering question 2.

The foregoing answer and opinion is submitted by the Chief Justice and the Associate Justices subscribing hereto on the twenty-fourth day of December, 1981.

> EDWARD F. HENNESSEY
> HERBERT P. WILKINS
> RUTH I. ABRAMS
> JOSEPH R. NOLAN

Mr. Justice O'Connor concurs but is unavailable for signature.

Mr. Justice Lynch is unavailable for signature.

Mr. Justice Liacos did not participate.

---

[10] To the extent the bill would require legislative approval before an executive department could revise its policy of spending appropriated funds, a serious question of separation of powers arises. *Opinion of the Justices*, 375 Mass. 827, 835-837 (1978). Art. 30 of the Declaration of Rights of the Massachusetts Constitution. The question remains even though the expenditure of Federal funds is involved. Cf. *Opinion of the Justices*, 369 Mass. 990, 992-995 (1976). In light of the answer we have given to question 1, we do not address the important question whether the bill, if enacted, would result in legislative interference with the constitutional power of the Governor to execute the laws and, more particularly, the executive authority to determine the level of expenditures necessary to implement legislatively mandated programs.