# OPINION OF THE JUSTICES.

## OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* Opinions of the Justices, General Court, Governor, Separation of powers, Initiative, Referendum. *General Court. Governor. Initiative. Referendum.*

Questions propounded by the Senate respecting the power and authority of the Legislature to enact proposed legislation implementing St. 1982, c. 503, a measure enacted by the voters at a general election, presented a "solemn occasion" for the Justices to furnish their advisory opinion even though, in answering the questions, they might also be expressing their views on the constitutionality of existing legislation. [1206-1207]

Proposed legislation providing that any license for a low-level radioactive waste disposal facility, once issued by the Department of Public Health, would be subject to approval by each branch of the Legislature would, if enacted, encroach impermissibly on the powers of the executive branch in violation of the separation of powers principles stated in art. 30 of the Massachusetts Declaration of Rights. [1207-1208]

The Legislature is without authority under art. 48 of the Amendments to the Constitution of the Commonwealth, or otherwise, to enact legislation providing that any action by the executive branch of government in selecting a site for a low-level radioactive waste disposal facility shall be submitted to the voters for approval in a State-wide general election. [1208-1210]

On June 12, 1986, the Justices submitted the following answers to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit their answers to the questions set forth in an order adopted by the Senate on March 26, 1986, and transmitted to this court on April 9, 1986, concerning a bill pending in the Senate regulating the management of low-level radioactive waste. The

order refers to Senate No. 1172, as do the questions transmitted to us. The Senate clerk also transmitted to us a copy of Senate No. 1763 which was substituted for Senate No. 1172. All the questions refer to § 29 of the pending bill and make sense only as referring to § 29 of Senate No. 1763.[1]

The Senate order states that "[t]here is an urgent need to establish a program for the management and disposal of all low-level radioactive waste generated in the commonwealth so that such waste may be disposed of without threat to the health, safety or welfare of the people" as described in the February, 1985, and January, 1986, reports of the Massachusetts Special Commission on Low-Level Radioactive Waste. The order continues, adding that "[t]here is an urgent need to create such program in accordance with requirements

[1] Section 29 of Senate No. 1763 reads as follows:

"(a) Upon issuance of a facility license, pursuant to section twenty-eight, to any facility not solely for the disposal or storage of low-level waste generated within the commonwealth through medical or bio-research applications, the management board shall transmit a copy of such facility license to the clerk of the house and the clerk of the senate. The legislative certification requirement of section 3-4 of the appendix to chapter one hundred sixty-four, as adopted by chapter five hundred three of the acts of nineteen hundred eighty-two, shall be satisfied by a resolution, duly adopted by majority vote of the members of each House, substantially as follows:

"*Resolved*: That, because the particular technology or means to be utilized at the proposed low-level waste facility to be located at (*superior site*) for which a facility license was issued by the department of public health on (*date*) to (*operator*) and the proposed site of such facility are superior to all other available technologies, means and sites from the combined standpoints of overall cost, reliability, safety, environmental impact, land-use planning, and avoiding potential social and economic dislocation, the issuance of such facility license is approved, and the General Court hereby grants its certification of such facility in accordance with chapter five hundred three of the Acts of nineteen hundred eighty-two.

"(b) The voter approval requirement of section 3-4 of the appendix to chapter one hundred sixty-four, as adopted by chapter five hundred three of the acts of nineteen hundred eighty-two, shall be satisfied by an affirmative vote of a majority of the voters voting in a state-wide general election to adopt a provision substantially as follows:

"The commonwealth shall be authorized to permit construction and operation of a low-level radioactive waste facility to be located at (*superior site*)."

of federal law which established deadlines for each state to enact legislation to deal satisfactorily with the problem of low-level radioactive waste management and disposal" by July 1, 1986, "or else face significant monetary penalties and obstacles in disposing of such waste." The order represents further that the General Court has grave doubts as to its power to enact Senate No. 1763 "while it contains and mandates the procedures required by" St. 1982, c. 503, which calls "for certain certification and approval procedures to be followed by the General Court and the voters before any low-level radioactive waste disposal facility may be constructed or operated within the commonwealth." Statute 1982, c. 503, approved by the people at the 1982 State election, provides in § 4 that " [n]o facility for the disposal or storage of low-level radioactive wastes shall be constructed or operated within the Commonwealth unless: (a) [its] construction and operation . . . have been approved by a majority of the voters voting thereon in a state-wide general election; and (b) the General Court has found, and has so certified by resolution duly adopted by majority vote of the members of each House: (i) that the particular technology or means to be utilized at the proposed waste facility is superior to all other available technologies or means from the combined standpoints of overall cost, reliability, safety, environmental impact, land-use planning, and avoiding potential social and economic dislocation; and (ii) that the site of the proposed waste facility is superior to all other available sites from the combined standpoints of overall cost, reliability, safety, environmental impact, land-use planning, and avoiding potential social and environmental dislocation."

The Senate asks for our opinion "upon the following important questions of law:

" (1) In the absence of an agreement with the Nuclear Regulatory Commission under section 274 of the *Atomic Energy Act of 1954*, as amended, 42 U.S.C. section 2021, providing for discontinuance of the regulatory authority of said commission and the assumption of such authority by the commonwealth would the enactment of the 'legis-

lative certification' and 'voter approval' requirements contained in said section twenty-nine of said Senate No. 1172 be constitutionally invalid under the Constitution of the United States, Article VI, Clause 2, in that such requirements impermissibly invade the realm of radioactive safety regulation preempted by Congress and impermissibly conflict with the regulatory authority over radioactive safety matters exclusively delegated by Congress to the Nuclear Regulatory Commission?

" (2) Would the enactment of the 'legislative certification' requirement contained in said section twenty-nine of said Senate No. 1172 violate Article XXX of Part the First of the Constitution of the Commonwealth, requiring separation of legislative, executive and judicial powers, in that it requires review and approval by the General Court of an executive licensing decision and would thereby encroach upon both executive and judicial powers?

" (3) Would the enactment of the 'legislative certification' requirement contained in said section twenty-nine of said Senate No. 1172 violate the due process guarantees contained in Articles I, X, XI and XII of Part the First of the Constitution of the Commonwealth and the Fourteenth Amendment to the Constitution of the United States, in that it would defeat or substantially impair the vested rights of a developer or operator of a waste management facility, compelled by section 3-7 of chapter 164 Appendix of the General Laws to obtain all necessary licenses, permits and approvals prior thereto, by subjecting such developer or operator to a fact-finding process (a) as to which he has no right of participation, opportunity to be heard, or appeal, and (b) which has no right of participation, opportunity to be heard, or appeal, and (c) which has no reasonable relationship to the legitimate exercise of legislative powers?

" (4) Would the enactment of the 'legislative certification' requirement contained in said section twenty-nine of said Senate No. 1172 violate the provisions of

Chapter I, Section I, Article II of Part the Second of the Constitution of the Commonwealth in that it interferes with the veto power of the governor?

" (5) Would the enactment of the 'voter approval' requirement contained in said section twenty-nine of said Senate No. 1172 violate the provisions of Articles X, XI, XII, and XXX of Part the First and of Chapter I, Section I, Article IV of Part the Second, of the Constitution of the Commonwealth, in that it constitutes a standardless delegation of legislative power to the electorate which is beyond the power of the General Court to effect and which cannot be effectively reviewed by the courts?

" (6) Would the enactment of the 'voter approval' requirement contained in said section twenty-nine of said Senate No. 1172 violate Article XXX of Part the First of the Constitution of the Commonwealth, in that it authorizes the exercise by the electorate of judicial powers and of executive powers in a manner which cannot be effectively reviewed by the courts?

" (7) Would the enactment of the 'voter approval' requirement contained in said section twenty-nine of said Senate No. 1172 violate Article XLVIII of the Articles of Amendment to the Constitution of the Commonwealth, in that (a) the subject matter to be submitted to the voters is excluded from referendum by said Article XLVIII; and (b) the initiative and referendum procedure for enacting legislation pursuant to said section thirty [2] does not conform to the constitutional requirements of said Article XLVIII?

" (8) Do the provisions of said section twenty-nine of said Senate No. 1172 interfere with interstate commerce in violation of Article 1, Section 8 of the Constitution of the United States in that said section twenty-nine applies to facilities '*not* solely for the disposal or storage of low-level waste generated within the common-

---

[2] We have been advised by the Senate chairman of the Special Legislative Commission on Low-Level Radioactive Waste that the reference in question 7 to § 30 should read § 29.

wealth through medical or bio-research applications'?
[emphasis added]." [3]

Our duty to furnish advisory opinions is limited to "solemn
occasions." Mass. Const. Part II. c. 3, art. 2, as amended by
art. 85 of the Amendments. *Opinion of the Justices*, 385 Mass.
1201, 1202-1203 (1982). *Opinions of the Justices*, 383 Mass.
895, 915 (1981). The Justices have generally viewed an occa-
sion to be solemn if a branch of the Legislature has before it
a bill which it seriously doubts it has power or authority to
enact. See *Opinion of the Justices*, 386 Mass. 1201, 1219-1220
(1982). Each question posed to us concerns, but only indirectly,
the constitutionality of the "legislative certification" and "voter
approval" provisions of St. 1982, c. 503, § 4. Questions as
to the construction or constitutionality of existing statutes do
not present a "solemn occasion." *Answer of the Justices*, 375
Mass. 790, 793 (1978). *Answer of the Justices*, 373 Mass.
867, 870-872 (1977). *Opinion of the Justices*, 231 Mass. 603,
607 (1919). *Opinion of the Justices*, 208 Mass. 614, 615-616
(1911).

The Justices have recognized, however, that an exposition
of existing law may be appropriate "in answering specific ques-
tions as to the power and authority of the Legislature to enact
a pending bill." *Opinion of the Justices*, 314 Mass. 767, 771
(1943). See *Opinion of the Justices*, 231 Mass. at 607. The
fact that we might be commenting on the constitutionality of
existing legislation will not preclude our answering a question
if, in the circumstances, there is a "solemn occasion."

---

[3] Responding to our invitation for briefs from interested persons, Public
Citizen and the Massachusetts Nuclear Referendum Committee have argued
that the questions do not present a "solemn occasion" and, in the alternative,
that all questions should be answered in the negative. The Massachusetts
Hospital Association; Brandeis University, Massachusetts Institute of
Technology, the President and Fellows of Harvard College, the Trustees
of Boston University and the Trustees of Tufts College; Boston Edison
Company and Yankee Atomic Electric Company; Nelrad Consortium, Inc.;
the League of Women Voters of Massachusetts, the Environmental Lobby
of Massachusetts and the Conservation Law Foundation of New England;
and Associated Industries of Massachusetts have argued in their briefs that
all questions should be answered in the affirmative.

Although the question is close, we think there is a solemn occasion. Section 29 seeks to implement the general provisions of St. 1982, c. 503, § 4, requiring legislative certification and voter approval of the construction and operation of a proposed low-level radioactive waste facility. If there requirements are unconstitutional, considerable time, effort, and public funds necessary to obtaining legislative certification and voter approval would be expended needlessly. The Senate also expresses concern that uncertainties relating to the implementation of St. 1982, c. 503, § 4, may interfere with Federal obligations regulating construction and operation of any proposed disposal or storage facility. In dealing with a comprehensive proposed bill concerning low-level radioactive waste management, the Senate is confronted with the question whether, in the context of the detailed, new procedures set forth in Senate No. 1763, it may properly implement the 1982 legislation.

The second, third, and fourth questions concern the constitutionality of the legislative certification requirement. The fifth, sixth, and seventh questions involve the constitutionality of the voter approval requirement. If, in answer to one question, we should be of the opinion that one requirement is unconstitutional, we perceive no need to consider any other question concerning that requirement. If we should be of the opinion that neither requirement is constitutional, we would not need to consider question 1 (which deals with preemption of these requirements by Federal law) and question 8 (which raises an issue under the commerce clause of the Federal Constitution).

Turning to the substance of the questions, we first consider those directly concerning the propriety of the legislative certification process under the Massachusetts Constitution. Our analysis must take into account the extensive procedures set forth in Senate No. 1763 for the approval of a facility. That bill requires the substantial involvement of the executive branch of government in the management of low-level radioactive waste, for example, in the establishment of criteria for selection of any "superior site" for waste storage and disposal, in the selection of site operators, and in the licensing and operation of facilities. All these detailed procedures lead toward a final

decision by the Department of Public Health to issue a facility license. Once the facility license has been issued, § 29 (*a*) permits a vote by each branch of the Legislature on a "resolution" conerning the proposed site and the "technology or means to be utilized at the proposed low-level waste facility."

Unlike the generalized requirement of legislative certification stated in St. 1982, c. 503, § 4 (*b*), Senate No. 1763 first delegates to the executive branch formidable enforcement responsibilities for the management of low-level radioactive waste and then seeks to submit the outcome of that complex executive process to the General Court. Senate No. 1763 thus contemplates that one branch of the Legislature, by failing to certify its approval under § 29 (*a*), could block the construction and operation of a licensed facility already found by the executive branch to warrant a license. Such a one-House veto provision is not within the legislative power. As a "legislative interference with the constitutional power of the Governor to execute the laws" (*Opinion of the Justices*, 384 Mass. 840, 847 n.10 [1981]), § 29 (*a*) encroaches impermissibly on the power of the executive in violation of separation of powers principles stated in art. 30 of the Massachusetts Declaration of Rights. See *Opinion of the Justices*, 369 Mass. 990, 993-994 (1976). Cf. *Opinion of the Justices*, 375 Mass. 827, 838 (1978) (the consensus of both Houses of the Legislature as "an openended means of regulating the conduct of members of the executive branch" would violate the constitutional provision concerning the executive veto).

We thus answer the second question as to the encroachment of the legislative certification requirement upon the powers of the executive in the affirmative. For the reasons given earlier, we respectfully decline to answer the remaining questions concerning the constitutionality of the legislative certification process.

We turn then to the questions concerning the constitutionality of the voter approval requirement. Section 29 (*b*) of Senate No. 1763 states that it provides for satisfaction of the voter approval requirement of St. 1982, c. 503, § 4, by "an affirmative vote of a majority of the voters voting in a state-wide

general election" authorizing the Commonwealth "to permit construction and operation of a low-level radioactive waste facility to be located" at a designated site.

Without pausing to consider its specific language, we find two issues inherent in the seventh question: (1) does the process of voter approval conform to the initiative and referendum procedure of art. 48, as amended by art. 74 and art. 108, of the Amendments to the Constitution of the Commonwealth, and (2) if not in conformity with art. 48, is the voter approval process prescribed by § 29 (*b*) otherwise constitutionally permissible?

The provision for voter approval does not conform to the "carefully fashioned scheme for the adoption of laws by popular vote" prescribed by art. 48. *Opinion of the Justices*, 370 Mass. 869, 877-878 (1976). See *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 320-321 (1951); *Opinion of the Justices*, 294 Mass. 610, 614 (1936); *Mount Washington* v. *Cook*, 288 Mass. 67, 70 (1934). The legislative power reserved to the people under art. 48 is much narrower than the plenary powers with which their representatives are vested. *Paisner* v. *Attorney Gen.*, 390 Mass. 593, 598-599 (1983). *Opinion of the Justices*, 262 Mass. 603, 605 (1928). A resolution not rising to the level of a "law" or a "constitutional amendment" cannot be submitted to the voters under art. 48. *Paisner* v. *Attorney Gen.*, *supra* at 601. Section 29 (*b*) does not ask the voters to consider a law enacted by the General Court but instead would ask the voters whether the Commonwealth shall be authorized to permit the construction and operation of a particular low-level waste facility.

A second aspect of the seventh question is whether, apart from the initiative and referendum process of the Commonwealth's Constitution, a plebiscite may constitutionally be conducted in the form proposed by § 29 (*b*). Although the question whether the people reserved any legislative powers under the Constitution of the Commonwealth may once have been in doubt (*Opinions of the Justices*, 160 Mass. 586, 587-589 [1894]; *id*. at 594-595 [Holmes, J.] ), the adoption of art. 48 of the Amendments substantially settled the issue. See *Buckley*

v. *Secretary of the Commonwealth*, 371 Mass. 195, 200 (1976); *Sears* v. *Treasurer & Receiver Gen., supra* at 320-321 ("Since the people have themselves adopted the Constitution with its amendments for their government, they are bound by the provisions and conditions which they themselves have placed in it, and when they seek to enact laws by direct popular vote they must do so in strict compliance with those provisions and conditions"); *Opinion of the Justices*, 239 Mass. 606, 610 (1921) ("Legislative power is vested exclusively in the General Court except so far as modified by the initiative and referendum amendment"). Article 48 expressly annulled the General Court's power under art. 42 of the Amendments to refer any act or resolve on its own initiative to the people for their rejection or approval. See *Buckley* v. *Secretary of the Commonwealth, supra* at 200.

In answer to the questions inherent in the seventh question we are of the opinion that the voter approval requirement contained in § 29 (*b*) of Senate No. 1763 does not conform to the voter approval requirements of art. 48 of the Amendments, as amended, and that the process of voter approval prescribed in § 29 (*b*) is not constitutionally permissible. We respectfully decline to answer other questions which directly concern the constitutionality of the voter approval requirement.

In view of our conclusions concerning the second and seventh questions, for the reasons stated earlier, we also respectfully decline to answer the first and eighth questions.

The foregoing answers are submitted by the Chief Justice and Associate Justices subscribing hereto on the 12th day of June, 1986.

EDWARD F. HENNESSEY
HERBERT P. WILKINS
PAUL J. LIACOS
RUTH I. ABRAMS
JOSEPH R. NOLAN
NEIL L. LYNCH
FRANCIS P. O'CONNOR