REPORTER'S NOTE. Since this decision other courts have dealt with "Tropic of Cancer." *McCauley* v. *Tropic of Cancer*, 20 Wis. 2d 134; *Zeitlin* v. *Arnebergh*, 59 Cal. 2d 901; *People* v. *Fritch*, 13 N. Y. 2d 119; *People* v. *Smith*, 31 U. S. Law Week 2227 (Appellate Department, Superior Court of California, October 24, 1962), cert. granted sub nom. *Smith* v. *California*, 373 U. S. 901.

DANIEL F. MURRAY *vs.* SECRETARY OF THE COMMONWEALTH & others.

Suffolk.   May 8, 1962. — July 18, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Constitutional Law*, Referendum, General Court, Appropriation of money. *General Court*. *Words*, "Appropriates."

Provision for the salaries of the members of the General Court under § 3 of art. 63 of the Amendments to the Constitution may be "in anticipation of appropriations" and need not itself be in form or substance an appropriation. [27]

St. 1960, c. 783, amending G. L. c. 3, § 9, increasing the salaries of the members of the General Court, merely fixed salaries and did not appropriate funds for their payment and was not excluded from the referendum by art. 48 of the Amendments to the Constitution, The Referendum, III, § 2. [28]

PETITION for a writ of mandamus filed in the Supreme Judicial Court for the county of Suffolk on March 20, 1962.

The case was reserved and reported by *Williams, J.,* without decision.

*James W. Kelleher* (*Daniel F. Leary* with him) for the petitioner.

*James J. Kelleher,* Assistant Attorney General, for the respondent Secretary of the Commonwealth.

*Irving Goodman* for the interveners.

WILKINS, C.J. The purpose of this petition by a registered voter for a writ of mandamus is to command the respondent Secretary of the Commonwealth to prepare, print, and cause to be distributed for use in the November State election ballots which shall not contain a question to be submitted on referendum whether St. 1960, c. 783, entitled "An Act increasing the salary of the members of the General Court," should be repealed. Five of the original signers of the referendum petition were allowed to intervene as parties respondent. The case is reserved and reported, without decision, in substance on the petition and the answer, which admits the allegations of fact in the petition.

Statute 1960, c. 783, amending G. L. c. 3, § 9 (as amended through St. 1956, c. 742, § 1) was signed by the Governor on November 23, 1960. It contained an emergency preamble, reciting that "deferred operation of this act would tend to defeat its purpose, which is in part to make effective on January fourth, nineteen hundred and sixty-one certain provisions thereof providing for the payment of additional compensation to members of the general court . . . ." The effective date was made January 4, 1961 (§ 3).

The act (§ 1) increased the annual salary of members by $1,500[1] and granted additional compensation to the President of the Senate, the Speaker of the House of Representatives, the floor leaders, the chairman of the Senate commit-

---

[1] This was achieved by raising to $6,700 the amount of $5,200 provided in St. 1956, c. 742, § 1.

tee on ways and means, and the chairman and the vice-chairman of the House committee on ways and means.

Pursuant to art. 48 of the Amendments to the Constitution, The Referendum, III, § 4, ''Petitions for Referendum on an Emergency Law or a Law the Suspension of which is not asked for,''[1] a petition was filed in the office of the respondent on December 20, 1960, by the required number of qualified voters. The petition was completed by the filing on February 21, 1961, of more than a sufficient number (82,505) of subsequent signatures of qualified voters. The respondent intends to place the question on the ballots.

The present petition alleges that c. 783 is not subject to referendum because art. 48, The Referendum, III, § 2, provides, ''No law . . . that appropriates money for the current or ordinary expenses of the commonwealth or for any of its departments, boards, commissions or institutions shall be the subject of a referendum petition.''

The phraseology of the emergency preamble of c. 783 indicates that the Legislature held to the view that the act was subject to referendum for, if it was not subject, the effective date could have been prescribed without an emergency preamble. See art. 48, The Referendum, I, entitled, ''When Statutes shall take Effect.''[2] See also G. L. (Ter. Ed.) c. 4, § 1.

The Legislature seems to have held to this view in enacting much similar legislation. In going back over the last score of years it will be found that bills, which are unquestionably appropriation bills, have been enacted without an emergency preamble and carry effective dates within the ninety day period mentioned in art. 48, The Referendum, I.

See, for example, the following statutes, all making appropriations for the salaries or expenses of the members of the General Court: St. 1943, c. 68, §§ 2, 8; St. 1943, c. 370,

---

[1] Subsequent amendments are not material.

[2] ''No law passed by the general court shall take effect earlier than ninety days after it has become a law, excepting laws declared to be emergency laws and laws which may not be made the subject of a referendum petition, as herein provided.''

§§ 2, 12; St. 1943, c. 572, §§ 2, 4; St. 1945, c. 404, §§ 2, 10; St. 1948, c. 198, §§ 2, 13; St. 1949, c. 307, §§ 2, 13; St. 1950, c. 580, §§ 2, 14. Later appropriation acts have followed the same pattern. See, for example, St. 1958, c. 434, §§ 2, 18; St. 1959, c. 433, §§ 2, 21; St. 1960, c. 507, §§ 2, 22; St. 1960, c. 786, §§ 2, 4; St. 1961, c. 495, §§ 2, 21.

On the other hand, it must be noted that, with one exception, all the amendments to G. L. c. 3, § 9, which St. 1960, c. 783, amends, have, like St. 1960, c. 783, been declared to be emergency laws. St. 1937, c. 236. St. 1941, c. 600. St. 1945, c. 38. St. 1945, c. 248. St. 1948, c. 655. St. 1949, c. 784. St. 1949, c. 801. St. 1950, c. 247. St. 1951, c. 803. St. 1953, c. 171. St. 1956, c. 742. The sole exception was St. 1941, c. 307, which was effective in the regular course, with a retroactive effect clause (§ 2). Two of these acts deserve special attention, as they provided specific appropriations to cover the payments therein authorized. St. 1945, c. 248, § 5. St. 1948, c. 655, § 3. These acts show, without looking beyond their terms, that the authorization of payment in c. 3, § 9, was not an appropriation.

Article 48 was ratified and adopted by the people on November 5, 1918. On the same date the people also ratified and adopted art. 63, which has to do with the budget and appropriations. Article 63, § 1, is entitled, "Collection of Revenue," and provides, "All money received on account of the commonwealth from any source whatsoever shall be paid into the treasury thereof." Article 63, § 2, contains the provision, "Within three weeks after the convening of the general court the governor shall recommend to the general court a budget which shall contain a statement of all proposed expenditures of the commonwealth for the fiscal year, including those already authorized by law, and of all taxes, revenues, loans and other means by which such expenditures shall be defrayed."

Article 63, § 3, is entitled, "The General Appropriation Bill," and provides: "All appropriations based upon the budget to be paid from taxes or revenues shall be incorporated in a single bill which shall be called the general appro-

priation bill. . . . The general court may provide for its *salaries, mileage, and expenses* and for necessary expenditures *in anticipation of appropriations* [italics supplied], but before final action on the general appropriation bill it shall not enact any other appropriation bill except on recommendation of the governor. . . ." These other appropriation bills must be enacted in conformity with art. 63, § 4.

The word "appropriates" in art. 48, The Referendum, III, § 2, becoming effective on the same day, must be taken as used in the same sense as "appropriation" and "appropriations" in art. 63, § 3.

The italicized words in art. 63, § 3, could not more clearly state their intended purpose, namely, to permit the legislators to receive payments on account of their salaries, mileage, and expenses prior to the enactment of the general appropriation bill, which must precede any special appropriation bill. See Debates in Massachusetts Constitutional Convention 1917–1918, Vol. 3, pp. 1141–1144, 1162–1163, 1172, 1176.

Two conclusions are obvious: (1) The Legislature may make provision for its own salaries "in anticipation of appropriations." (2) Such provision need not necessarily be in form or in substance an appropriation. Therefore, there is no basis for the premise of the petitioner's argument that no payment could be made without a prior or contemporaneous appropriation, or for his conclusion based on that premise that St. 1960, c. 783, must be an appropriation bill. We need not decide whether the 1858 statutes[1] cited by the petitioner were, as he contends, "unquestionably" appropriation acts because they provided for the payment of the salaries thereby fixed. Assuming that G. L. c. 3, § 9, is a successor to these 1858 statutes, after the ratification and adoption of arts. 48 and 63 by the people in 1918, § 9 and the amendment to it by St. 1960, c. 783, are within the authorization of art. 63, § 3, for payments "in anticipation of appropriations."

---

[1] St. 1858, c. 1, § 2.  St. 1858, c. 2, § 1.

We are of opinion that, viewed by itself, St. 1960, c. 783, merely fixed salaries, and did not appropriate funds for their payment. That was done by a second act approved on the same day. See St. 1960, c. 786, § 2, Item 0101–01 (compensation of Senators) and Item 0102–01 (compensation of Representatives), made effective upon its passage (§ 4). The distinction between fixing salaries and appropriating money for their payment is fundamental. In *Opinion of the Justices,* 309 Mass. 571, 587, it was said, ''A provision . . . fixing the salary of a public officer is not an appropriation of that amount for the payment of such salary.'' See *Opinion of the Justices,* 323 Mass. 764, 766–767. Considered only as an amendment to G. L. c. 3, § 9, St. 1960, c. 783, authorized additional payments of compensation but did not appropriate the funds to cover those payments.

In addition to approval by the present Attorney General, the view we express has approval in the opinions of two previous Attorneys General. See opinion of Attorney General Attwill, dated July 14, 1919; opinion of Attorney General Allen, dated July 10, 1920, 5 Op. A. G. 612. The bill considered in *Opinion of the Justices,* 300 Mass. 630, differed from the act before us in material respects. One sufficient distinction is that it set aside a specific sum in the State treasury, namely, the highway fund, and directed its immediate payment.

*Petition dismissed.*