## OPINION OF THE JUSTICES TO THE
## HOUSE OF REPRESENTATIVES.

*Constitutional Law,* Initiative petition, General Court. *Initiative. General Court. Elections,* Term limitation, Validity of petition.

Discussion of the initiative process set forth in art. 48, The Initiative, of the Amendments to the Constitution of the Commonwealth and of the requirement of strict compliance with the procedural provisions set forth therein. [1218-1219]

An initiative petition pending before the General Court violated art. 48, The Initiative, II, § 3, of the Amendments to the Constitution where the petition contained a certain provision that was not "related" to the subject of the initiative. [1220-1221]

An initiative petition pending before the General Court that would reduce legislative compensation if enacted proposed a law and did not intrude on the right of the Legislature to appoint its own officers and to determine its own rules of proceedings. [1221-1224]

Language in an initiative petition pending before the General Court that proposed to alter the language of G. L. c. 3, § 9, regarding term limits violated art. 48, The Initiative, II, § 3, as amended by art. 74, § 1, where G. L. c. 3 had been a ballot question presented to the voters and enacted in one of the "two preceding biennial state elections." [1224-1226]

On April 29, 1996, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court respectfully submit their responses to the questions set forth in an order adopted by the House of Representatives on March 11, 1996, and transmitted to the Justices on March 13, 1996. The order recites that House Doc. No. 5780, an initiative petition pending before the General Court entitled "An Act encouraging a citizen legislature accountable to the people" (initiative), proposes amendments to the General Laws of the Commonwealth, that would, among other things, reduce compensation and expenses for members of the Legislature. The order states that grave doubt exists as to the

constitutionality of the initiative, if finally approved. The initiative proposes amendments to G. L. c. 3, § 9 (1994 ed.); G. L. c. 3, § 9B (1994 ed.); G. L. c. 11, § 12 (1994 ed.); and G. L. c. 12A, § 9 (1994 ed.), and would repeal the provisions of St. 1994, c. 192, §§ 3, 4, 5, and 12. It would accomplish the following:

(1) reduce legislators' base compensation and expenses by fifty per cent;

(2) require that legislators receive all their compensation in the first six months of the year and no compensation in any subsequent month;

(3) tie future compensation to median Massachusetts household income as determined by the United States Bureau of the Census;

(4) eliminate or reduce additional compensation for legislative leadership positions; and

(5) permit the State Auditor and Inspector General to oversee legislative financial accounts and purchasing activities.

With regard to legislative compensation in particular, House Doc. No. 5780 would replace the first paragraph of G. L. c. 3, § 9, with the following language:

"Section 9. Notwithstanding the provisions of any other law to the contrary and except as herein provided, each member of the general court shall receive for each annual session a base compensation of $23,205. The president of the senate and the speaker of the house of representatives shall each receive for each annual session additional compensation for their respective positions of $17,365. The chairman of the senate committee on ways and means and the chairman of the house committee on ways and means shall each receive for each annual session additional compensation of $12,495. The floor leader(s) of each of the major political parties in the senate and the floor leader(s) of each of the major political par-

ties in the house of representatives shall each receive for each annual session additional compensation for their respective positions of $11,250. The assistant floor leader of the minority party in the senate and the assistant floor leader of the minority party in the house of representatives shall each receive for each annual session additional compensation of $7,500.

"The members and leaders shall receive their total respective compensation in six monthly installments of $1/6$ of their total compensation beginning in January and ending in June, subject to appropriation by the legislature. After June, they shall not receive any portion of their compensation. The compensation of the members and leaders of the general court shall be adjusted annually, beginning in January 1998, at the same percentage rate as the increase or decrease in Massachusetts median household income for the preceding year, as determined by the U.S. Bureau of the Census."

The order presents the Justices with the following questions:

"1. Does the inclusion in House No. 5780 of the provisions in clause (2) of section two granting authority to the Inspector General to request and summons records of the Office of the Commissioner of Veterans' Services cause House No. 5780 to contain subjects which are not related or mutually dependent, as provided by Article XLVIII, The Initiative, Part II, Section 3 of the Amendments to the Constitution of the Commonwealth, so that House No. 5780 is not properly introduced and pending before the General Court?

"2. Does the inclusion in House No. 5780 solely of matters exclusively within the powers textually committed to the Senate and House of Representatives by the provisions of the Constitution of the Commonwealth referred to in Questions 4 to 9, inclusive, cause House No. 5780 not to propose a law within the meaning of said Article XLVIII, so that House No. 5780 is not properly introduced and pending before the General Court?

"3. Does the deletion in section one of House No. 5780 of the provisions of law inserted by the people in the Term Limits question presented to the voters at the last biennial election cause House No. 5780 to be either affirmatively or negatively, substantially the same as a measure which has been . . . submitted to the people at either of the two preceding biennial state elections', as provided in Article XLVIII, The Initiative, Part II, Section 3 of the Amendments to the Constitution of the Commonwealth, so that House No. 5780 is not properly introduced and pending before the General Court?

"4. If House No. 5780 is properly introduced and pending before the General Court would its provisions providing for payment of compensation to the members of the General Court for only six months, from January through June, in an amount which is fifty percent of the amount currently paid to most members as compensation, and prohibiting any compensation to all members subsequent to June, constitute an attempt to establish a six month session of the Legislature and thereby circumvent and be in violation of the provisions of Part II, Chapter 1, Section 2, Article VII and Part II, Chapter 1, Section 3, Article X of the Constitution of the Commonwealth wherein the Senate and House of Representatives, respectively possess the power to determine their own rules of proceeding?

"5. If House No. 5780 is properly introduced and pending before the General Court would its provisions providing for payment of compensation to members of the General Court for only six months, from January through June, in an amount which is fifty percent of the amount currently paid to most members as compensation, and prohibiting any compensation to all members subsequent to June, constitute an attempt to establish a six month session of the Legislature and thereby circumvent and be in violation of the provisions of Article X of the Amendments to the Constitution of the Commonwealth which provide for the political year or legislative session to begin on the first Wednesday of January and be dissolved on the day next preceding the

first Wednesday of January and which empowers the General Court to assemble at such times as they shall judge necessary'?

"6. If House No. 5780 is properly introduced and pending before the General Court would its provisions providing for payment of compensation to members of the General Court for only six months, from January through June, in an amount which is fifty percent of the amount currently paid to most members as compensation, and prohibiting any compensation to all members subsequent to June, constitute an attempt to establish a six month session of the Legislature and thereby circumvent and be in violation of the provisions of Part I, Article XXII of the Constitution of the Commonwealth which require the Legislature to frequently assemble?

"7. If House No. 5780 is properly introduced and pending before the General Court would its provisions providing for payment of compensation to members of the General Court for only six months, from January through June, in an amount which is fifty percent of the amount currently paid to most members as compensation, and prohibiting any compensation to all members subsequent to June, constitute an attempt to establish a six month session of the Legislature and thereby circumvent and be in violation of the provisions of Part II, Chapter 1, Section 2, Article VI, Part II, Chapter 1, Section 3, Article VIII and Article LII of the Articles of Amendments of the Constitution of the Commonwealth which grant the power to adjourn to the Senate and House of Representatives and the power to recess to the General Court?

"8. If House No. 5780 is properly introduced and pending before the General Court would its provisions providing for payment of compensation to members of the General Court for only six months, from January through June, in an amount which is fifty percent of the amount currently paid to most members as compensation, and prohibiting any compensation to all members

subsequent to June, serve in effect to compel the General Court to prorogue and thereby improperly infringe on the powers of the General Court, Governor and Executive Council pursuant to Part II, Chapter 2, Section 1, Articles V and VI of the Constitution of the Commonwealth which establishes the method to prorogue the General Court?

"9. If House No. 5780 is properly introduced and pending before the General Court would its provisions setting the compensation of the officers of the Senate and House of Representatives represent an exercise of the implied unicameral power to determine the compensation of the officers of each branch, subject to appropriation, derived from the power of the Senate and the House of Representatives to choose their own officers pursuant to Part II, Chapter 1, Section 2, Article VII and Part II, Chapter 1, Section 3, Article X of the Constitution of the Commonwealth?

"10. If House No. 5780 is properly introduced and pending before the General Court would its provisions providing for payment of compensation to the members of the General Court for only six months, from January through June, in an amount which is fifty percent of the amount currently paid to most members as compensation, and prohibiting any compensation to all members subsequent to June, violate the balance of powers protected in the frame of government established by the following provisions of the Constitution of the Commonwealth: the separation of powers requirement of Part I, Article XXX; the right of free petition guaranteed by Part I, Article XIX; the prohibition on property qualifications for service in the Legislature established in Article XIII of the Amendments; and the additional provisions of the Constitution of the Commonwealth relating to the frame of government which are described in questions 4 to 9, inclusive?"

We invited interested parties to submit briefs. In response, we received briefs from the counsel to the Massachusetts House of Representatives, the President of the Senate, and

Associated Industries of Massachusetts, and a joint brief from Citizens for Limited Taxation and the Coalition for Payraise Repeal.

A. *Overview.* "Article 48 grants to the people the right, through the use of a special legislative procedure, to enact laws directly without being thwarted by an unresponsive Legislature. *Buckley* v. *Secretary of the Commonwealth,* 371 Mass. 195, 199-200 (1976). However, art. 48 also imposes on the General Court the duty to vote on the enactment of the proposed law. Art. 48, The Initiative, V, § 1." *Opinion of the Justices,* 375 Mass. 795, 801-802 (1978). Questions 1-3 "relate[ ] to a present duty in the performance of which the [House] may be aided by our opinions." *Id.* at 802. Because "our answers will assist the House in the performance of a present duty," "we are obligated to respond" to these questions. *Id.* See *Opinion of the Justices,* 413 Mass. 1201, 1216 (1992). Cf. *Answer of the Justices,* 374 Mass. 858, 860 (1978).[1] See generally *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth,* 384 Mass. 209, 216-218 (1981).

The initiative process in Massachusetts is "indirect," that is, the Legislature is offered an opportunity to enact a law proposed by initiative before the initiative may be placed before the people. See Stewart, The Law of Initiative Referendum in Massachusetts, 12 New England L. Rev. 455, 456, 482 (1977). In order for the Legislature to consider an initiative, the Attorney General must certify that it complies with certain constitutional prerequisites. In particular, the Attorney General must certify that, inter alia, the initiative: (1) "is not, either affirmatively or negatively, substantially the same as any measure which has been qualified for submission or submitted to the people at either of the two preceding biennial state elections," (2) "contains only subjects not excluded from the popular initiative," and (3) contains only subjects "which are related or which are mutually dependent." Art. 48, The Initiative, II, § 3, of the Amendments to the Constitution of the Commonwealth, as amended by art. 74, § 1, of the Amendments. Once an initiative has been so certified, both houses of the General Court must vote on it before the first Wednesday of May. Art. 48, The Initiative, V,

---

[1]Because it is our opinion that the initiative does not properly conform to the requirements of art. 48, The Initiative, II, § 3, as amended by art. 74, § 1, art. 48, The Initiative, V, § 1, as amended by art. 81, § 2, we do not answer Questions 4-10.

§ 1, as amended by art. 81, § 2. If the initiative is enacted before that date, it becomes law. *Id.* If the initiative is not enacted by that date, it is returned to its sponsors, who then have a limited time to collect the additional signatures needed to place the initiative on the ballot at the next State election. *Id.* See *Opinion of the Justices,* 370 Mass. 869, 872, 875 & n.3 (1976); *Opinion of the Justices,* 318 Mass. 793 796-797 (1945). See also *Citizens for a Competitive Mass.* v. *Secretary of the Commonwealth,* 413 Mass. 25, 27-28 (1992).

B. *Procedural requirements.* We are of the view that the initiative does not meet the procedural requirements of the Constitution. See art. 48, The Initiative, II, § 3, as amended by art. 74, § 1; art. 48, The Initiative, V, § 1, as amended by art. 81, § 2. We first observe that "the provisions of art. 48 are mandatory rather than directory." *Citizens for a Competitive Mass.* v. *Secretary of the Commonwealth, supra* at 30. "[W]hen [the people] . . . seek to enact laws by direct popular vote they must do so in strict compliance with those provisions and conditions." *Sears* v. *Treasurer & Receiver Gen.,* 327 Mass. 310, 321 (1951).

This court has required strict adherence to the constitutional requirements for initiative petitions. They are not mere technicalities. For example, in *Capezzuto* v. *State Ballot Law Comm'n,* 407 Mass. 949, 954-957 (1990), the court held that an initiative should not have been certified as proper where the sponsors obtained nine out of the ten required signatures on the initial petition. It was insufficient that a tenth person had orally agreed to the contents of the petition. *Id.* at 956-957. With these considerations in mind, we now address Questions 1, 2, and 3.[2]

---

[2]Each of the first three questions assumes that House Doc. No. 5780 would not be properly introduced and pending before the General Court if the Justices should conclude that the possible violation of art. 48 stated in the question is in fact a violation of art. 48. Section 4 of art. 48, The Initiative, II, states that "the proposed measure shall then be deemed to be introduced and pending" if the initiative petition has been filed as required by § 3, signed by the required number of voters, and transmitted to the General Court. There is no provision in art. 48 that an initiative petition ceases to be introduced and pending if the Justices of this court have rendered an opinion that some aspect of the initiative petition fails to conform to art. 48. We give our answers to questions 1 and 3 without implying thereby that the initiative petition is not still introduced and pending before the General Court.

1. *Relatedness.* Question 1 asks whether the initiative violates the art. 48 requirement that all subjects of an initiative be related or mutually dependent. Art. 48, The Initiative, II, § 3. See *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 218-221 (1981); *Opinion of the Justices*, 309 Mass. 555, 560-561 (1941). Subjects are related "[i]f . . . one can identify a common purpose to which each subject of an initiative petition can reasonably be said to be germane . . . ." *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, *supra* at 219-220.

The focus of the relatedness inquiry in Question 1 is § 2 (2) of the proposed law, which would delete the words "except records under the provisions of section eighteen of chapter sixty-six as defined by section three of said chapter sixty-six" from several provisions of G. L. c. 12A, § 9, which determines the powers of the Inspector General. The records currently protected from the Inspector General's oversight by G. L. c. 66, § 18 (1994 ed.), are those of the General Court and certain papers filed and records kept by the commissioner of veterans' services. In their brief the sponsors of the initiative expressly reject the suggestion that inclusion of the commissioner of veterans' services in the initiative is the result of a drafting oversight.

We must determine then, whether the provisions of the initiative relating to the office of veterans' services are related to a subject to which the provisions of the initiative also relate. While the court has not construed the relatedness provision narrowly, "the general subject of an initiative proposal cannot be so broad as to render the 'related subjects' limitation meaningless." *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, *supra* at 219. In their brief the drafters suggest that the common purpose of the initiative is "to make Massachusetts government more accountable to the people." The brief of counsel to the Massachusetts House of Representatives, on the other hand, proposes that the common purpose of the bill may be legislative accountability, which is a position that finds support in the title of the petition. Legislative accountability provides a common theme that meets the test set out in *Massachusetts Teachers Ass'n*, *supra*. An interpretation of the general purpose of the initiative as being restricted to issues involving legislative compensation would be too narrow. On the other hand, the general purpose proposed by the

drafters is unacceptably broad. One could imagine a multitude of diverse subjects all of which would "relate" to making government more accountable to the people.

Permitting the Inspector General access to the records of the commissioner of veterans' services does not relate in any meaningful way to improving legislative accountability. Therefore, we are of the opinion that the initiative petition contains subjects that are not related. We answer Question 1, "Yes," subject to the caveat addressed in note 2, *supra*.

2. *Laws* vs. *rules*. Question 2 asks whether the initiative proposes a "law" or whether it intrudes on the right of a branch of the Legislature to determine its own internal rules. See *Paisner* v. *Attorney Gen.*, 390 Mass. 593, 598-601 (1983) (discussing difference between laws and rules); Part II, c. 1, § 3, art. 10 of the Massachusetts Constitution (House); Part II, c. 1, § 2, art. 7 of the Massachusetts Constitution (Senate).[3] Opponents of the initiative argue that it does not propose a law because: (a) the initiative determines compensation for legislators in general and legislative officers in particular; and (b) the initiative effectively creates a six-month legislative session. We address these issues in turn.

(a) *Legislative compensation.* We believe that an initiative affecting legislative compensation proposes a law and not a rule. Except for certain excluded subjects, the power of the people to make a law through an initiative is equal to the law-making power of the Legislature. *Paisner* v. *Attorney Gen.*, *supra* at 601. An art. 48 referendum calling for a repeal of a prior legislative pay raise was held to be a proper subject for a referendum. *Murray* v. *Secretary of the Commonwealth*, 345 Mass. 23, 28 (1962). Because, at least in this context, the initiative power is neither greater nor less than the referendum power, see *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, *supra* at 223-224, it stands to reason that, if the people may repeal a pay raise, they may enact a pay

---

[3]The fact that the Legislature has enacted statutes on a particular matter is not dispositive. Statutes may contain either laws or rules of proceedings, while initiatives may propose only laws. *Paisner* v. *Attorney Gen.*, 390 Mass. 593, 601-602 (1983).

reduction. See *Opinion of the Justices,* 413 Mass. 1201 (1992); *Opinion of the Justices,* 375 Mass. 795 (1978).[4]

Furthermore, the provisions of the Constitution which discuss legislative compensation require that the General Court — that is, both houses of the Legislature — pass laws regarding such compensation. See Part II, c. 1, § 1, art. 4 ("full power and authority are hereby given . . . to [the] *general court* . . . to make . . . laws . . . for the necessary support . . . of the government" [emphasis added]); art. 63, § 3 ("The *general court* may provide for its salaries, mileage, and expenses and for necessary expenditures" [emphasis added]). See also G. L. c. 3, § 9 (setting the compensation for both members and officers of the General Court). This requirement of bicameral approval for salaries, expenses, and expenditures may be contrasted with the unicameral nature of the provisions allowing each house to determine its own rules of proceedings and to appoint its own officers. Part II, c. 1, § 2, art. 7. Part II, c. 1, § 3, art. 10. See *Paisner* v. *Attorney Gen.,* *supra* at 600. See also *INS* v. *Chadha,* 462 U.S. 919, 955-956 n.21 (1983).

Opponents of the initiative argue that from the power to choose officers comes the implied power to determine the compensation those officers receive. See Part II, c. 1, § 3, art. 10; Part II, c. 1, § 2, art. 7. There is no support for this so-called implied power in our law. Cases discussing the power to set compensation for municipal officials (as opposed to legislative officers) are inapposite. See *City Council of Boston* v. *Mayor of Boston,* 383 Mass. 716, 721 (1981); *Whalen* v. *First Dist. Court of E. Middlesex,* 295 Mass. 305, 310 (1936). The case of *Colo* v. *Treasurer & Receiver Gen.,* 378 Mass. 550, 561 (1979), also provides no support. In that case, the court concluded that a statute providing a salary for the chaplains of the General Court did not violate constitutional provisions regarding freedom and establishment of religion. *Id.* The court specifically declined, however, to address the defendant's argument that the setting of such salaries was an

---

[4]It is important to note that, while the initiative proposes a law that sets salaries and expenses for legislators, it does not purport to appropriate the funds to pay those salaries and expenses. See *Murray* v. *Secretary of the Commonwealth,* 345 Mass. 23 (1962); *Opinion of the Justices,* 323 Mass. 764, 766 (1948). See also *Opinion of the Justices,* 419 Mass. 1201, 1213 (1994).

internal rule of the Legislature arising from the constitutional power of each house to appoint its own officers and determine its own rules of proceedings. *Id.* at 553.[5]

Opponents of the proposed law also argue that the provision of the initiative specifying the time period for payment of legislative salaries proposes a rule and not a law. We disagree. First, the initiative could have cut compensation in half without referring to the method of payment. Merely requiring that paychecks be handed out during the first six months of the year does not require that the work of the Legislature must be similarly restricted. There is no constitutional requirement that the legislators be paid any compensation at all for their service.[6]

(b) *Six-month session.* Opponents of the initiative claim that it effectively establishes a six-month legislative session and thereby affects the right of each house of the General Court to determine its own rules of proceedings, and its power to assemble, adjourn, and recess at particular times. See Part II, c. 1, § 2, art. 6; Part II, c. 1, § 2, art. 7; Part II, c. 1, § 3, art. 8; Part II, c. 1, § 3, art. 10 of the Constitution of the Commonwealth. See also *Opinion of the Justices*, 303 Mass. 664 (1939). An initiative that seeks to effect such changes, they argue, does not propose a law within the meaning of art. 48.

The initiative does not establish a six-month legislative session or in any other way mandate that the Legislature curtail or modify its meeting times or rules of proceeding. Although

---

[5]The court's decision in *Paisner* v. *Attorney Gen.*, *supra*, is not to the contrary. The initiative in *Paisner*, which contained a provision in part limiting the salary differentials of legislative leaders, was held to propose a "rule" not a "law." *Id.* at 603. The other provisions in the *Paisner* initiative, however, involved explicit rules of internal procedure, which made the proposal unlawful. The court did not discuss and did not need to discuss the compensation provision as a separate question. *Id.* at 596.

[6]The constitutional provisions cited by the opponents in their briefs are not to the contrary. Article 63, § 3, of the Amendments, provides that "[t]he general court may provide for its salaries, mileage, and expenses and for necessary expenditures in anticipation of appropriations . . . ." This provision means that legislative salaries, if provided by law, may be paid in advance of an appropriation. Similarly, the power of the General Court to make laws "for the necessary support and defence of the government," see Part II, c. 1, § 1, art. 4 of the Massachusetts Constitution, gives the Legislature the power to enact laws providing for salaries, but it does not mandate such laws. See *Opinion of the Justices*, 323 Mass. 764 (1948).

the proposal certainly intends to *encourage* a part-time Legislature, it does not *mandate* one. Nowhere in the initiative is the Legislature prevented from exercising any of its numerous constitutionally protected rights and duties, whether to assemble, adjourn, or recess. Although the proposed law directs payment of legislators' compensation during the first six months of the year, it does not in any way restrict the law-making abilities of the Legislature to that time period. Indeed, the proposed law would leave in place legislators' per diem payments, the time period for receipt of which is not restricted in any way. See G. L. c. 3, § 9B. Similarly, the initiative does not affect the allowances paid to legislators for legislative business affairs conducted at the State House after prorogation of the General Court. See G. L. c. 3, § 9C (1994 ed.). Thus, under the proposed law, legislators would continue to receive payment for their duties without regard to when or how often those duties are performed.

For all the above reasons, we are of opinion that the initiative proposes a law under art. 48. We answer Question 2, "No."

3. *Term limits.* Question 3 addresses what may be a drafting mistake in the initiative. In proposing new language for G. L. c. 3, § 9, the drafters omitted a section of the recently enacted term limits law regarding term limits for State senators. Article 48 specifically provides that an initiative may not propose (or seek to repeal or change) a law that has been voted on in either of the last two State-wide elections. Art. 48, The Initiative, II, § 3, as amended by art. 74, § 1.

In the State-wide election in 1994, the people enacted a term limits law placed on the ballot through the initiative process. See St. 1994, c. 230. Section 2 of that law added the second paragraph to G. L. c. 3, § 9, which prevents legislators elected after four terms in nine consecutive years from earning any compensation. Because this ballot question was presented to the voters and enacted in 1994, any change in the language through the initiative process would presumably violate art. 48.

The initiative alters the term limits language in the second paragraph of G. L. c. 3, § 9, by deleting the words "and any senator in the general court who has served, or but for resig-

nation would have served, four consecutive terms in that office within the preceding nine years." The effect of this omission is to apply the "no compensation" provisions of the term limits law to State representatives, but not to State senators.[7] This change violates the provisions of art. 48 prohibiting initiative proposals relating to measures the substance of which were enacted in either of the two prior State-wide elections.

In a communication to the Attorney General,[8] the drafters state that they did not intend to change the term limits language in G. L. c. 3, § 9, and only copied it over for completeness.[9] The mistake, they argue, does not prevent the initiative from being properly introduced and pending. However, neither the Justices nor the Legislature has the power to redraft the petition prior to the first Wednesday of May, even to correct so-called drafting errors. The Constitution requires that "[a]n initiative petition shall set forth the full text of the . . . law . . . which is proposed by the petition." Art. 48, The Initiative, II, § 1. Furthermore, the Legislature is constitutionally obligated to take a vote "upon the enactment of such law [proposed by the initiative] *in the form in which it stands in such petition*" (emphasis added). Art. 48, The Initiative, V, § 1, as amended by art. 81, § 2. See *Opinion of the Justices*, 309 Mass. 631, 637 (1941).[10]

---

[7]In contrast, the ballot access provisions of the term limits law apply to both representatives and senators. See St. 1994, c. 230, § 1; G. L. c. 53, § 48 (1994 ed.).

[8]The communication is attached to the order as Appendix C.

[9]The petitioners also argue that, while the remaining language refers to representatives only, and not senators, it may still be interpreted to refer to all members of the General Court, since members of both the Senate and the House of Representatives are, in fact, "representatives" in the general sense of the term. Assuming arguendo that such an amendment were constitutionally permissible, the argument still fails. The only reasonable interpretation of the plain language of the petition in its current form, especially when compared with other sections of St. 1994, c. 230, is that it effectively repeals a portion of the term limits law.

[10]The Constitution provides only two exceptions to this strict requirement. Under the first exception, the petitioners may offer amendments to the initiative by way of the Attorney General, who must certify that the amendments are "perfecting in . . . nature and [do] not materially change the substance of the measure." Art. 48, The Initiative, V, § 2, as amended by art. 81, § 3. See *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 233 (1946). Such perfecting amendments may not be offered until after

Accordingly, "if a law proposed by initiative petition is adopted by the people so as to become law of the Commonwealth . . . it will be a law in the precise terms of the 'full text' of such proposed law as contained in the original petition." *Id.* at 638. "[A]ny addition to, change in, or omission from the 'full text' of a proposed law . . . would interfere with the popular initiative." *Id.*[11]

In addition, the drafting error has consequences beyond the initiative itself, affecting the constitutionally required summary prepared by the Attorney General, which would appear on the ballot. The summary now states: "After four consecutive terms in office within the preceding nine years, a state representative would not receive any salary. *This limit would not apply to a state senator*" (emphasis added). There is no constitutionally approved procedure for amending the summary prior to the first Wednesday of May. We answer Question 3, "Yes," subject to the caveat expressed in note 2, *supra*.

C. *Constitutionality.* In Questions 4-10 of the order we are asked, if the initiative is properly introduced and pending before the General Court, whether the law it proposes would violate various provisions of the Constitution of the Commonwealth. Because we are of opinion that the initiative does not properly conform to the requirements of art. 48, we

___

the Legislature fails to enact the proposed law. Art. 48, The Initiative, V, § 2. Under the second exception, the Legislature may offer a substitute for the initiative which does not alter its substance. Art. 48, The Initiative, III, § 2. See *Buckley* v. *Secretary of the Commonwealth*, 371 Mass. 195, 201 (1976) (in creating substitute, legislature has power to "edit, polish or amend an initiative proposal while retaining in that process the sense of the proposal so revised").

[11]The rationale for this provision is illustrated by the following exchange between two members of the 1917-1918 constitutional convention:

"Mr. Avery: The thing that has troubled has been the rigidity of the scheme, as so many people, ten or twenty, might draw up a bill or a petition and after that form had been fixed, it could not be changed. Anybody who knows about legislative procedure knows that often in the very last stages in the passage of a bill things are discovered which ought to be remedied.'. . .

"Mr. Walker: [Mr. Avery] mistakes when he thinks it is possible to allow the Legislature to amend a measure that is presented to it on initiative petition, for the power to amend is the power to totally change. . . . [S]o that we lose the initiative and referendum absolutely if we permit the Legislature to amend the bill.' " 2 Debates in the Massachusetts Constitutional Convention 1917-1918, 635 (1918).

respectfully request that we be excused from answering Questions 4-10. See *Opinion of the Justices,* 418 Mass. 1201, 1212 (1994); *Opinion of the Justices,* 413 Mass. 1201, 1217-1218 (1992).

In summary, we answer Questions 1 and 3, Yes; Question 2, No; and we do not answer Questions 4, 5, 6, 7, 8, 9, and 10.

The foregoing answers and opinion are submitted by the Chief Justice and Associate Justices subscribing hereto on the twenty-ninth day of April, 1996.

PAUL J. LIACOS

HERBERT P. WILKINS

RUTH I. ABRAMS

NEIL L. LYNCH

FRANCIS P. O'CONNOR

JOHN M. GREANEY

CHARLES FRIED