COMMONWEALTH *vs.* CHUCK M. YEE.

Suffolk.    March 7, 1972. — April 5, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, & HENNESSEY, JJ.

*Statute,* Effective date, Repeal. *Constitutional Law,* Referendum.

St. 1971, c. 1071, § 2, repealing G. L. c. 94, §§ 212, 212A, dealing
with possession of heroin and possession thereof with intent to sell,
did not relate to "the powers . . . of courts" or to an excluded
matter within art. 48 of the Amendments of the Massachusetts
Constitution, The Referendum, III, § 2, and so was subject to a
referendum and would not have become effective until ninety days
after its approval [535–539]; and St. 1972, c. 2, effective during the
ninety day period, was a timely amendment delaying the effective
date of the repeal of c. 94, §§ 212, 212A, from the end of the ninety
day period to a later date when new c. 94C, covering the subject
matter of §§ 212, 212A, took effect [535, 539].
By virtue of G. L. c. 4, § 6, Second, a prosecution for possession of
heroin and possession thereof with intent to sell for which one
was indicted before the repeal of G. L. c. 94, §§ 212, 212A, by
St. 1971, c. 1071, § 2, was not precluded by the repeal. [539–540]

INDICTMENTS found and returned in the Superior
Court on November 30, 1971.

The cases were reported by *Collins,* J.

*Robert Snider,* Assistant District Attorney, for the
Commonwealth.

*John A. Pino* for the defendant.

SPIEGEL, J.    The case is before us on an interlocutory
report under the provisions of G. L. c. 278, § 30A, inserted
by St. 1954, c. 528.    There was a hearing below on
February 3, 1972, on the defendant's motion to dismiss.
The trial judge presented the following questions: "(1)
What is the effective date of . . . [St. 1971, c. 1071, § 2]?
(2) Assuming the effective date of . . . [St. 1971, c. 1071,
§ 2] is thirty (30) days after approval, what is the effect
of . . . [St. 1972, c. 2]?    (3) May the defendant, who was
indicted prior to the effective date of the repeal of c. 94,
sections 212 and 212A, be tried and punished by this
court?"

The judge stated that he was of opinion that the questions raised by the motion to dismiss "are being and may be raised in almost every case involving a violation of G. L. c. 94 throughout the Commonwealth . . . and . . . that a . . . resolution of such questions . . . is required before trial."

On November 19, 1971, the defendant was arrested by officers of the Boston drug control unit. On November 30, 1971, a Suffolk County grand jury returned two indictments charging the defendant with possession of heroin (G. L. c. 94, § 212), and possession of heroin with intent to sell (G. L. c. 94, § 212A). On January 18, 1972, the defendant filed a motion to dismiss the indictments for lack of jurisdiction. On February 3, 1972, after a hearing, the motion was denied.

Statute 1971, c. 1071, was approved on November 11, 1971. The Commonwealth's brief aptly describes c. 1071 as a "law respecting the repeal and establishment of laws governing the administration and control of narcotics in the hands of doctors, dentists, druggists, and the like and of the criminal law relating to the illegal possession and traffic of narcotics." Section 1 of c. 1071 amends the General Laws by inserting c. 94C.[1] Section 2 repeals several sections of G. L. c. 94, including §§ 212 and 212A. Section 9 provides, in pertinent part: "Chapter ninety-four C of the General Laws, inserted by section one of this act, shall take effect on July the first, nineteen hundred and seventy-two." This section did not contain any provision relative to the effective date of the repeals referred to in § 2 of c. 1071.

In the absence of further action by the Legislature, the statutes under which the defendant was indicted would have been repealed in either thirty days from November 11, 1971, if the act was not subject to the Referendum, or in ninety days from November 11, 1971 if the act was ·subject to the Referendum. See *Com-*

---

[1] Sections 32 and 34 of c. 94C cover the type of conduct alleged in the indictments against the defendant.

*monwealth* v. *French,* 357 Mass. 356, 376, fn. 21.
In either case, there would have been an intervening
period within which possession of heroin, and pos-
session of heroin with intent to sell, would not have
been unlawful. To remedy this problem, the Legislature
passed St. 1972, c. 2 (approved January 27, 1972).[2]
Declared to be an emergency law, it was to be effective
immediately. The apparent intent of this act was to
eliminate the hiatus between the repeal of the old statutes
regulating drugs and the effective date of the new stat-
utes. Whether this result was achieved is the question
to which we address ourselves.

1. The Commonwealth's position is that St. 1971, c.
1071, § 2, would not have become effective until February
9, 1972, ninety days after its approval. This being so,
St. 1972, c. 2, was timely corrective legislation which
eliminated the gap between the repeal of the old drug
laws and the effective date of the new ones. The defend-
ant, on the other hand, argues that § 2 became effective
on December 11, 1971, thirty days after its approval.
If the defendant is correct, it would follow that, as the
Commonwealth concedes, St. 1972, c. 2, is meaningless.
If the pertinent statutes had already been repealed, St.
1972, c. 2, could not have revived them. This being so,
the defendant further contends, the Superior Court has
no power to try, convict, and sentence him.

The following statutory and constitutional provisions
are relevant in determining the effective date of § 2 of
c. 1071. General Laws (Ter. Ed.) c. 4, § 1, provides:
"A statute enacted by the general court which may be
made the subject of a referendum petition and which
is declared therein to be an emergency law, unless other-
wise expressly provided therein, shall take effect as soon

---

[2] "Chapter 1071 of the acts of 1971 is hereby amended by striking
out section 9 and inserting in place thereof the following section: —

*"Section 9.* This act shall take effect on July first, nineteen hundred
and seventy-two, and any registration or license issued under chapter
ninety-four of the General Laws prior to said effective date shall ter-
minate on said date."

as it has the force of a law conformably to the constitution. A statute so enacted which may not be made the subject of such a petition and for which a different time of taking effect is not therein expressly provided shall take effect as soon as it has the force of a law as aforesaid if it is declared therein to be an emergency law, otherwise on the thirtieth day next after the earliest day on which it has the force of a law as aforesaid; provided, that a statute so enacted which may not be made the subject of such a petition and which is to take effect upon its acceptance by a municipal or other corporation or by any board or officer thereof, unless otherwise expressly provided therein, shall, for the purpose of such acceptance only, take effect as soon as it has the force of a law as aforesaid."

Article 48 of the Amendments to the Constitution of the Commonwealth, The Referendum, provides, in part:

"I. *When Statutes shall take Effect.*

"No law passed by the general court shall take effect earlier than ninety days after it has become a law, excepting laws declared to be emergency laws and laws which may not be made the subject of a referendum petition, as herein provided. . . .

"III. *Referendum Petitions.*

"Section 1. *Contents.* — A referendum petition may ask for a referendum to the people upon any law enacted by the general court which is not herein expressly excluded.

"Section 2. *Excluded Matters.* — No law that relates to religion, religious practices or religious institutions; or to the appointment, qualification, tenure, removal or compensation of judges; or to the powers, creation or abolition of courts; or the operation of which is restricted to a particular town, city or other political division or to particular districts or localities of the commonwealth; or that appropriates money for the current or ordinary expenses of the commonwealth or for any of its departments, boards, commissions or institutions shall be the subject of a referendum petition."

Thus, if St. 1971, c. 1071, is a law "which may be made the subject of a referendum petition" (G. L. c. 4, § 1), the effective date of § 2 would have been February 9, 1972. Art. 48 of the Amendments to the Constitution of the Commonwealth, The Referendum, I. If not subject to referendum, the effective date of § 2 would have been December 11, 1971. G. L. (Ter. Ed.) c. 4, § 1. Whether St. 1971, c. 1071, is a law subject to referendum depends upon whether it is a law relating to the "powers, creation or abolition of courts." Art. 48 of the Amendments to the Constitution of the Commonwealth, The Referendum, III, § 2.

The chief thrust of c. 1071 is not directed at the judiciary. It is true, of course, that by virtue of the Superior Court's general criminal jurisdiction (G. L. c. 212, § 6, as amended), the legislation does, at least, indirectly relate to the "powers . . . of courts." [3] In another context, this court has stated: "A general law covering a subject disconnected with courts in its main features does not come within the prohibition of . . . art. 48 . . . because, in an incidental and subsidiary way, the work of the courts may be increased or diminished or changed." *Horton* v. *Attorney Gen.* 269 Mass. 503, 511. Accord, *Cohen* v. *Attorney Gen.* 354 Mass. 384, 387.

Article 48 of the Amendments to the Constitution of the Commonwealth, The Referendum, III, gives to the people a general power to review by referendum *any law* enacted by the Legislature which is not *expressly excluded.* Any law relating to the "powers . . . of courts" would be an exception to this general power of referendum. Exceptions to a general law, whether statutory or constitutional, should be strictly construed. *Opinion of the Justices,* 254 Mass. 617, 620. *State* v. *Forney,* 108 Ohio St. 463, 467. We think that a reasonable

---

[3] Similarly, actions taken under several of the administrative provisions of c. 94C could presumably be subject to judicial review under G. L. c. 30A. (E.g. § 13 (a) of c. 94C, which deals with the revocation by the board of registration in pharmacy of a registration to "manufacture, distribute, dispense or possess a controlled substance.")

construction of "powers . . . of courts" would encompass a statute which expressly confers or restricts a court's jurisdiction. For instance, G. L. c. 212, § 6, as amended, which states that the Superior Court "shall have original jurisdiction of all crimes" could be characterized as a law relating to the "powers . . . of courts" and hence not subject to referendum. On the other hand, a statute making certain specified acts or omissions criminal (or repealing such a statute) would not be included within the phrase "powers . . . of courts" because it does not relate to jurisdiction.

The cases of *Commonwealth* v. *Sacco*, 255 Mass. 369, 411, and *deLeo* v. *Childs*, 304 F. Supp. 593, 596 (D. Mass.), further illustrate the line we are attempting to draw. In the *Sacco* case, the court stated in effect that St. 1922, c. 508, which empowered the Superior Court to grant motions for new trials "at any time before sentence," was a law relating to the powers of courts. In the *deLeo* case, the Massachusetts "long arm" statute, G. L. c. 223A, inserted by St. 1968, c. 760, was also held to relate to the powers of courts. Sections 2 and 3 (as amended) of G. L. c. 223A begin with the words "A court may exercise personal jurisdiction over a person." In both the *Sacco* and the *deLeo* cases, the pertinent statutes referred directly to the powers of the court. In the instant case, the effect of c. 1071 on the "powers . . . of courts" is only incidental.

It seems obvious that a contrary holding would be against the public policy of the Commonwealth, as expressed both in St. 1971, c. 1071, and the preamble to St. 1972, c. 2, in regulating the possession and sale of drugs. Public policy is a basic source of law when no previous decision or rule of law is applicable. The failure to leave regulated the sale and possession of drugs for any period of time could have a serious impact on the public health and safety of the citizens of the Commonwealth. *Opinion of the Justices*, 254 Mass. 617, 619.

We therefore hold that St. 1071, c. 1071, is a law sub-

ject to the Referendum.   Thus, § 2 of this act would
have become effective on February 9, 1972, ninety days
after approval.   Consequently, St. 1972, c. 2, was a
timely amendment which delayed the effective date of
§ 2 of c. 1071 until July 1, 1972.   The foregoing disposes
of question 1.

2. Because of our disposition of question 1, we do
not treat with question 2.

3. We answer question 3 in the affirmative for the
reasons stated in our disposition of question 1.   There
is a further reason to hold that the Superior Court has
jurisdiction to try and punish the defendant.   As here-
in above stated the acts and the indictments occurred
prior to December 11, 1971.   The defendant concedes
that G. L. c. 94, §§ 212 and 212A, were in effect at the
time of arrest and indictments.   The basis of his motion
to dismiss in the Superior Court, argued on February 3,
1972, was that "there are no laws presently in effect
which place criminal sanctions on the unlawful possession
or sale of heroin."   Therefore, the defendant argued, the
Superior Court had no power to try, convict and punish
him.   General Laws c. 4, § 6, as amended, provides, in
part: "In construing statutes the following rules shall
be observed, unless their observance would involve a con-
struction inconsistent with the manifest intent of the
law-making body or repugnant to the context of the same
statute: . . .   Second, The repeal of a statute shall not
affect any punishment, penalty or forfeiture incurred
before the repeal takes effect, *or any suit, prosecution or
proceeding pending at the time of the repeal for an
offence committed,* or for the recovery of a penalty or
forfeiture incurred, *under the statute repealed"* (em-
phasis supplied).   We stated in *Nassar* v. *Common-
wealth,* 341 Mass. 584, 589, that "[t]he general intention
of c. 4, § 6, Second, is to preserve, even after legislative
change of a statute, the liability of an offender to pun-
ishment for an earlier act or omission made criminal
by the statute repealed in whole or in part."   In the
*Nassar* case, as here, both the acts and the indictments

occurred before the earliest possible repeal date.    Accord, *Commonwealth* v. *Benoit*, 346 Mass. 294, 296.

4. The case is remanded to the Superior Court for further proceedings in conformity with this opinion.

*So ordered.*