RICHARD W. MAZZONE & others[1] vs. ATTORNEY GENERAL
& another.[2]

Suffolk. September 7, 2000. - October 2, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Initiative. Constitutional Law,* Judiciary, Initiative petition, Appropriation,
Amendment of the Constitution. *Attorney General. Controlled Substances.*

In an action brought by taxpayers to challenge the Attorney General's certifica-
tion, pursuant to art. 48, The Initiative, Part II, § 3, of the Amendments to
the Massachusetts Constitution, as amended by art. 74 of the Amendments,
of Initiative Petition 99-10, this court concluded that the petition does not
"relate[ ] to . . . the powers . . . of courts," excluded from the popular
initiative by art. 48, The Initiative, Part II, § 2, where the effect of the
petition on the courts would be merely incidental and subsidiary to the
main purpose of the petition, viz., to make drug rehabilitation programs
available to more defendants who would benefit from treatment. [519-522]
In an action brought by taxpayers to challenge the Attorney General's certifica-
tion, pursuant to art. 48, The Initiative, Part II, § 3, of the Amendments to
the Massachusetts Constitution, as amended by art. 74 of the Amendments,
of Initiative Petition 99-10, this court concluded that the provisions of the
petition that would repeal G. L. c. 94C, § 47 (*d*), do not "make[ ] a
specific appropriation of money from the treasury of the commonwealth,"
excluded from the popular initiative by art. 48, The Initiative, Part II, § 2,
inasmuch as the petition is a general law directing money and property
forfeited in connection with drug offenses be used for specific purposes,
namely, drug rehabilitation programs. [522-524]
In an action brought by taxpayers to challenge the Attorney General's certifica-
tion pursuant to art. 48, The Initiative, Part II, § 3, of the Amendments to
the Massachusetts Constitution, as amended by art. 74 of the Amendments,
of Initiative Petition 99-10, this court concluded that the petition is not a
"measure" that "relates to . . . the reversal of a judicial decision,"
excluded from the popular initiative by art. 48, The Initiative, Part II, § 2,
inasmuch as the petition does not attempt to reenact a provision of the
General Laws that has been invalidated on constitutional grounds.
[525-528]

[1] Thomas Burke, Harold F. Owens, Roger D. Warren, William T. Breault,
Eileen Cheevers, Joseph Cheevers, Maria Cheevers, Jovita Fontanez, and
Marie Matava. The ten individual plaintiffs are registered voters. The Mas-
sachusetts Chiefs of Police Association and district attorneys from each
district, suing in their official capacities, are also plaintiffs.

[2] Secretary of the Commonwealth.

In an action brought by taxpayers to challenge the Attorney General's certification of Initiative Petition 99-10, pursuant to art. 48, The Initiative, Part II, § 3, of the Amendments to the Massachusetts Constitution, as amended by art. 74 of the Amendments, this court concluded that the subjects of the petition were "related or . . . mutually dependent," as required by art. 48, The Initiative, Part II, § 3, where the provisions of the petition related directly or indirectly to a single, common purpose, that is, expanding the scope of the Commonwealth's drug treatment programs and funding those programs. [528-529]

In an action brought by taxpayers to challenge the Attorney General's certification of Initiative Petition 99-10, pursuant to art. 48, The Initiative, Part II, § 3, of the Amendments to the Massachusetts Constitution, as amended by art. 74 of the Amendments, this court concluded that the provisions of the petition that amend the current definition of the term "[d]rug dependent person" appearing in G. L. c. 111E, § 1, to include individuals "at risk of becoming drug dependent" are not reviewable matters under art. 48, and that Petition 99-10 does, on the whole, state a "general rule of conduct with appropriate means for its enforcement": the Attorney General correctly certified the petition as proposing a "law" for purposes of art. 48. [529-531]

In an action brought by taxpayers to challenge the Attorney General's certification of Initiative Petition 99-10, pursuant to art. 48, The Initiative, Part II, § 3, of the Amendments to the Massachusetts Constitution, as amended by art. 74 of the Amendments, this court concluded that a constitutional challenge to the provisions of the petition that provide that the Commonwealth's share of assets forfeited under Federal drug laws shall be deposited in the drug treatment trust fund was not a proper subject of review under art. 48, which is limited to whether a petition includes an excluded matter under art. 48. [531]

In an action brought by taxpayers to challenge the Attorney General's certification, pursuant to art. 48, The Initiative, Part II, § 3, of the Amendments to the Massachusetts Constitution, as amended by art. 74 of the Amendments, of Initiative Petition 99-10 ("An Act to expand the scope of the commonwealth's drug treatment program and provide funding through fines for drug violations and the forfeiture of assets used in connection with drug offenses"), this court concluded that the Attorney General's summary of the petition, pursuant to art. 48, The Initiative, Part II, § 3, as amended by art. 74, §§ 1, 4, met the requirements of art. 48. [531-533]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 6, 2000.

The case was reported by *Spina*, J.

*Martha Coakley*, District Attorney (*Marc E. Canner, Robert C. Cosgrove, John P. Zanini, Robert C. Thompson & Joseph M. Ditkoff*, Assistant District Attorneys, with her) for the plaintiffs.

*Peter Sacks*, Assistant Attorney General (*Adam Simms*, Assistant Attorney General, with him) for the defendants.

*Merita A. Hopkins & Alicia S. McDonnell* for Boston Police Department, amicus curiae, submitted a brief.

SPINA, J. The plaintiffs[3] filed a complaint in the Supreme Judicial Court for Suffolk County seeking relief in the nature of certiorari and mandamus against the Attorney General and the Secretary of the Commonwealth (Secretary). The plaintiffs challenge the Attorney General's certification, pursuant to art. 48, The Initiative, Part II, § 3, of the Amendments to the Massachusetts Constitution, as amended by art. 74 of the Amendments, of Initiative Petition 99-10, "An Act to expand the scope of the commonwealth's drug treatment program and provide funding through fines for drug violations and the forfeiture of assets used in connection with drug offenses." The plaintiffs also seek to enjoin the Secretary from placing the measure on the ballot in the November, 2000, election.

The Attorney General certified that the petition is in the proper form, and that it includes only subjects that are related or mutually dependent and that are not excluded by art. 48 from the initiative process. He also prepared a written summary of the petition, all as required by art. 48, The Initiative, Part II, § 3, and forwarded both his certification and summary to the Secretary. As of the first Wednesday of May, 2000, the General Court had neither enacted the measure nor proposed substitute legislation. Art. 48, The Initiative, Part V, § 1, as amended by art. 81, § 2, of the Amendments. Art. 48, The Initiative, Part III, § 2. See *Opinion of the Justices*, 370 Mass. 869, 871-872 (1976). In July, 2000, a single justice of this court reserved and reported the case to the full court on the basis of the complaint, a stipulation in lieu of answer, and a statement of agreed facts.

As a finding for the plaintiffs on any one of their challenges would bar the measure's appearance on the ballot, we address the seven specific issues they raise.[4] Cf. *Cohen* v. *Attorney Gen.*, 357 Mass. 564, 566 (1970).

---

[3]We acknowledge receipt of an amicus brief submitted by the Boston police department.

[4]It has become common practice to challenge the validity of initiative petitions by joining qualified voters — whose rights to sue on these matters are undisputed, with organizations, municipalities, and public officers in their official capacities — whose rights to sue are disputed. See, e.g., *Associated Indus. of Mass.* v. *Attorney Gen.*, 418 Mass. 279, 279 n.1 (1994); *Slama* v. *Attorney Gen.*, 384 Mass. 620, 622-625 (1981).

The initiative and referendum processes governed by art. 48 reserve certain legislative powers to the people. As used in constitutional provisions related to

*Petition 99-10.* We summarize only the most salient features of the proposed law. Petition 99-10 would establish a drug treatment trust fund under a new section of G. L. c. 10 to be used by the Commissioner of Public Health for drug rehabilitation purposes under G. L. c. 111E, § 10. Chapter 111E currently permits "drug dependent" individuals charged with certain drug offenses under G. L. c. 94C to request diversion into treatment in lieu of prosecution. The measure would amend the definition of the term "drug dependent person" appearing in G. L. c. 111E, § 1, to include individuals "at risk of becoming drug dependent," thereby expanding the class of individuals permitted to make such a request. General Laws c. 111E, § 10, would also be amended to permit first or second offenders of certain drug distribution, manufacture, and trafficking laws to seek diversion

---

the political process, "people" has been construed to refer only to qualified voters. *Opinion of the Justices,* 226 Mass. 607, 611 (1917). Qualified voters may propose initiative petitions and referenda, *Cohen* v. *Attorney Gen.,* 354 Mass. 384 (1968), and may challenge the Attorney General's certification of or refusal to certify an initiative petition or referendum. Cf. *Buckley* v. *Secretary of the Commonwealth,* 371 Mass. 195, 197-198 (1976) (first ten signers had standing to prohibit Secretary from placing substitute, legislatively sponsored, measure on ballot instead of initiative petition).

We have often chosen not to reach the question of organizational or official standing to challenge the certification of an initiative petition where the standing of the individual voters was sufficient to sustain the action. See *Tax Equity Alliance for Mass., Inc.* v. *Commissioner of Revenue,* 401 Mass. 310, 314 (1987). Here, while raised by the Attorney General, the issue was neither fully briefed nor argued. We take judicial notice of the fact that the police association and the district attorneys in their official capacities lack standing to raise constitutional challenges to the certification of this petition. See *Horton* v. *Attorney Gen.,* 269 Mass. 503, 513-514 (1929). The police association is not entitled to vote. Neither the police association nor the district attorneys in their official capacities would be permitted to propose an initiative petition. See *Opinion of the Justices, supra.* Nor are the personal or property rights of the district attorneys in their capacities as public officers involved such that they may claim an injury to support this challenge. *Assessors of Haverhill* v. *New England Tel. & Tel. Co.,* 332 Mass. 357, 360, 362 (1955) (assessors had no standing to challenge constitutionality of statute providing, among other things, that taxpayers, but not assessors, could appeal from decision of Commissioner of Corporations and Taxation because "[a]ssessors are strictly public officers [and] [i]t is for the Legislature to say what rights shall be given to them in their official capacities and what rights denied"). Because the matters raised by the ten qualified voters are identical to those raised by the public officials, we decide the issues. In the future, we will entertain the position of a nonvoter only as presented in an amicus brief.

into treatment, whereas current law expressly prevents them from doing so.

Petition 99-10 proposes to fund the expanded drug treatment programs with monies that would otherwise be deposited in special law enforcement funds under G. L. c. 94C, § 47 (*d*). Section 47 governs the forfeiture of monies and assets used in or obtained in the commission of drug offenses. The measure would tighten the standards under which real property could be forfeited so that only that property used in a manner "*not merely incidental* to the commission or the facilitation of the commission of a violation" of selected sections of c. 94C would be subject to forfeiture (emphasis added). It would also divert into the trust fund monies and assets forfeited under the Federal drug laws that are currently used for other purposes, and would heighten the standard of proof the Commonwealth would have to meet in a forfeiture proceeding.

1. *"Powers of courts" exclusion.* The plaintiffs argue that the petition violates art. 48 because it would change the power of the courts by conferring discretion to divert from prosecution those charged with drug manufacture, distribution, and trafficking offenses, and the power to dismiss such cases over the Commonwealth's objection.

The popular initiative reserves to the people a limited power to enact laws directly. Expressly excluded from the initiative petition process is any "measure that relates to . . . the powers . . . of courts." Art. 48, The Initiative, Part II, § 2. The same exclusion appears in The Referendum section of the Constitution. Art. 48, The Referendum, Part III, § 2. We have treated these exclusions similarly. See *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 225 (1981); *Commonwealth* v. *Yee*, 361 Mass. 533, 537 (1972). The constitutional convention that debated art. 48 understood the term "powers" of courts to mean something more than the jurisdiction of the courts. See 2 Debates in the Massachusetts Constitutional Convention 1917-1918, 991 (1918). One delegate noted that "[p]owers relates to the ability or the right to do anything."[5] *Id.* (remarks of Mr. Cummings). We have rejected an overly rigid interpretation of the phrase because the popular

---

[5]The context of this remark bears mention. Mr. Cummings was the sponsor of the portion of art. 48, The Initiative, Part II, § 2, of the Amendments to the Massachusetts Constitution, that excludes from the initiative petition process any measure that relates to "the appointment, qualification, tenure, removal,

initiative would be reduced to a near nullity if it "could not make any change in any law that was enforceable in the courts." *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth, supra* at 226. We have construed the "powers of courts" exclusion as prohibiting petitions whose main purpose is to affect the powers of courts. A petition whose main purpose is otherwise, though it may affect the work of the courts, is permissible. See *Commonwealth* v. *Yee, supra* at 537-538 (referendum whose main thrust was addition and repeal of certain criminal statutes indirectly related to powers of courts, but because it was not intended expressly to confer or restrict their jurisdiction, it was not excluded matter for purposes of referendum under art. 48); *Horton* v. *Attorney Gen.*, 269 Mass. 503, 511 (1929) (initiative petition creating automobile insurance fund that repealed both a one-year statute of limitations and an express requirement for judicial review of automobile security rates would likely result in increase or diminution in work of courts, but such change was held to be incidental and subsidiary to "main design" of petition, i.e., providing better mechanism for compensating victims of automobile accidents — and thus not excluded). Contrast *Commonwealth* v. *Sacco*, 255 Mass. 369, 410-411 (1926) (law empowering Superior Court to grant new trials at any time before sentencing was law relating to powers of courts).

Before a measure may be submitted to the people, the Attorney General must certify that the petition contains subjects that are not excluded under art. 48, The Initiative, Part II, § 3. Our review of that certification is de novo. See *Yankee Atomic Elec. Co.* v. *Secretary of the Commonwealth*, 403 Mass. 203, 207 (1988). We must conduct more than a facial inquiry into the involvement of excluded subjects and determine whether the factual impact of the legislation proposed by the petition will involve an excluded subject. See *Yankee Atomic Elec. Co.* v. *Secretary of the Commonwealth*, 402 Mass. 750, 757-760 (1988). As noted above, legislation that has as its main purpose

recall or compensation of judges; or to the reversal of a judicial decision; or to the powers, creation or abolition of courts." 2 Debates in the Massachusetts Constitutional Convention 1917-1918, 989-992 (1918). He stated that his sole intention in having permitted the word "powers" to be added to this amendment was to protect the courts' power to invalidate legislation as unconstitutional. *Id.* at 989. As the drafter noted with some dismay, there was a considerable divergence of opinion among the delegates as to the meaning of the word. *Id.* at 991.

something other than to affect the "powers of courts" will not be excluded under art. 48 simply "because, in an incidental and subsidiary way, the work of the courts may be increased or diminished or changed." *Horton* v. *Attorney Gen., supra.*

The initiative petition in this case, like the petition in *Horton* or the referendum in *Yee*, has, as its main design, a purpose other than directly affecting the power of the courts. The stated purpose of the petition is "to expand the scope of the commonwealth's drug treatment program." This would be accomplished by expanding the category of defendants who may request, pursuant to G. L. c. 111E, § 10, diversion into drug rehabilitation programs to include those charged with drug manufacture, distribution, or trafficking, as well as by expanding the definition of the term "[d]rug dependent person" to include those "at risk of becoming drug dependent." The time frame during which a defendant may request an examination to determine whether he or she is a "drug dependent" individual who would benefit from treatment would be increased from the current five days from being informed of this right to no less than five days before trial.

The measure would affect the work of the courts but it would not change the nature of the court's discretion under G. L. c. 111E, § 10. Under the current version of G. L. c. 111E, § 10, trial judges have discretion to determine, without an evidentiary hearing or independent examination, that a defendant is "a drug dependent person, who would benefit by treatment." If a judge makes that determination, the proceedings may be stayed and the individual assigned to treatment. If, instead, a judge permits the prosecution to proceed, treatment may be ordered as part of any sentence meted out. A judge may consider many factors in determining whether an individual should be diverted into a treatment program including, but not limited to, the individual's past criminal record and the nature of the offense charged. G. L. c. 111E, § 10, eighth par. The statute provides for mandatory dismissal of the charges if the director of the division of rehabilitation reports that the individual "successfully completed" the treatment or if the individual completed "the term of treatment ordered by the court." G. L. c. 111E, § 10, twenty-second par. Otherwise, a judge has discretion in determining whether the individual has "successfully completed" a treat-

ment program. On making such a determination a judge may dismiss the charges, even over the Commonwealth's objection.[6]

The effect of this petition on the courts would be merely incidental and subsidiary to the main purpose of the initiative, which is to make drug rehabilitation programs available to more defendants who would benefit from treatment. We conclude, therefore, that the initiative does not "relate[] to . . . the powers . . . of courts."

2. *"Appropriation" exclusion.* The plaintiffs next argue that the initiative petition is invalid because it "makes a specific appropriation of money from the treasury of the commonwealth," a matter also excluded from the popular initiative by art. 48, The Initiative, Part II, § 2. They contend that the petition impermissibly would repeal an appropriation established by the Legislature and replace it with a new, popularly approved appropriation. The petition would repeal G. L. c. 94C, § 47 (*d*), which governs the distribution of money and property forfeited in connection with drug offenses to law enforcement agencies, and would create a new trust fund into which such forfeited monies and proceeds would be deposited. Under the petition, forfeitures would be governed by new standards, funds would come from additional sources, and the fund's deposits would be spent for new purposes.

The constitutional convention understood the term "appropriation" to mean something more than legislative authority to spend. 3 Debates in the Massachusetts Constitutional Convention 1917-1918, 1180 (1920). "Appropriation" has the same meaning in art. 48 as it does in art. 63 of the Amendments to the Massachusetts Constitution. See *Murray* v. *Secretary of the Commonwealth*, 345 Mass. 23, 26-27 (1962). Article 63 describes the process by which the General Court appropriates, i.e., receives and disburses, State revenues. Funds not subject to the appropriations process under art. 63 are not appropriations for purposes of art. 48. See *Opinion of the Justices*, 393 Mass. 1209, 1221-1222 (1984). Funds may be received by the Commonwealth or "on account" of the Commonwealth, held in trust

---

[6]Although the plaintiffs cite no authority, we take as true their contention that, under current law, the discretionary dismissal of the charges may be made "over the Commonwealth's objection." See G. L. c. 111E, § 10, twenty-second par. Contrast *Commonwealth* v. *Brandano*, 359 Mass. 332, 335 (1971) (absent statutory authority, judge may not dismiss charges without consent of Commonwealth).

by a State official, and disbursed according to legislative strictures, yet not be subject to art. 63. *Id.* at 1222.

A general law that directs that funds be used for a specific purpose is not an appropriation. *Milton* v. *Commonwealth*, 416 Mass. 471, 474 (1993) (G. L. c. 41, § 108L, directing that municipalities "shall be reimbursed by the commonwealth" for portion of certain pay increases to police officers, not appropriation). Contrast *Brookline* v. *The Governor*, 407 Mass. 377, 382-385 & n.5 (1990) (discussing the status of appropriation made by general law enacted as outside section of the general appropriation act). Rather, an appropriation occurs when, as a result of an appropriations bill proposed and adopted according to the constitutional requirements of art. 63, monies are committed and released by the Legislature to the executive branch and no longer within the control of the Legislature. See *Associated Indus. of Mass.* v. *Secretary of the Commonwealth*, 413 Mass. 1, 8 (1992). Monies directed by operation of a general law to a specific purpose that remain "subject to appropriation" are expressly left within the Legislature's control and are not appropriations. See *id.* at 9.

The plaintiffs' argument rests on the incorrect assumption that both the existing and proposed versions of G. L. c. 94C, § 47 (*d*), are appropriations. General Laws c. 94C, § 47, currently governs the forfeiture of conveyances, real property, monies, and other things of value used in or obtained from the commission of crimes under G. L. c. 94C, § 47. Section 47 (*d*) specifies that all assets obtained under that section be deposited into special law enforcement trust funds to be used by district attorneys, police departments, and the Attorney General for drug enforcement, education, and rehabilitation purposes.[7] General Laws like G. L. c. 94C, § 47 (*d*), that specify that funds be directed to particular purposes, are not appropriations. See *Milton* v. *Commonwealth, supra* at 473 ("Appropriations are made, not in the General Laws, but through the operation of the annual budget and appropriation process described in art. 63 of

---

[7]The plaintiffs argue in their brief that the Legislature allocated these funds to the relevant law enforcement agencies to cover "certain ordinary expenses." The text of G. L. c. 94C, § 47 (*d*), however, explicitly states that monies deposited in the funds for use by investigating police departments "shall not be considered a source of revenue to meet the operating needs of such department[s]."

the Amendments to the Constitution of the Commonwealth"). The monies and proceeds deposited into the existing trust funds are not deposited into the general fund, nor is it possible to know in advance how much will be obtained through the forfeiture process. Hence, no specific dollar amount is "appropriated," i.e., budgeted, approved, and released, under the constitutional requirements of art. 63. The language in § 47 (d), that the distribution of forfeited assets shall be made "without further appropriation," does not imply that § 47 (d) makes an appropriation. Rather, it indicates that law enforcement agencies have already received the necessary legislative authorization to use whatever funds they may be able to obtain under the chapter without further legislative action. See 3 Debates, *supra* at 1197 (remarks of Mr. Theller citing many examples of funds whose proceeds could be expended "by authority, but not by appropriation" and the difficulty of drafting a financial plan for the government given the many necessary examples of such spending schemes).

The same analysis applies to the trust fund proposed by the initiative petition. Under the proposal, monies and assets used in or obtained from the commission of crimes under G. L. c. 94C, fines, and other proceeds, would be received by the State treasurer "on account" of the Commonwealth while the director of the division of drug rehabilitation would be the designated custodian of the fund. The fund would be used only for the purpose specified, but remain "subject to appropriation." The legislation proposed by the petition neither makes a specific appropriation nor usurps the Legislature's authority to make specific appropriations. See *Associated Indus. of Mass.* v. *Secretary of the Commonwealth, supra* at 9; *Opinion of the Justices*, 393 Mass. 1209, 1221-1222 (1984).[8]

The plaintiffs further argue that petitioners should not be permitted to do indirectly by initiative petition what they would not be permitted to do directly by referendum. Article 48, The

---

[8]Additionally, the contention that there is something improper about a petition that would require the Legislature to make an appropriation to cover expenses now covered by the current scheme fails under the express terms of art. 48, which directs the Legislature to provide the necessary funding for initiative petitions not funded by independent sources. See art. 48, The Initiative, Part II, § 2. See also *Opinion of the Justices*, 309 Mass. 571, 583 (1941) ("the mere fact that a law will require the appropriation of money from the treasury of the Commonwealth to carry it into effect does not, of itself, bring such law within the scope of the prohibition").

Initiative, Part II, § 2, excludes from the initiative process those petitions that make a "specific appropriation of money from the treasury of the commonwealth," while art. 48, The Referendum, Part III, § 2, excludes from the referendum process those petitions that seek repeal of existing appropriations. Because we conclude that G. L. c. 94C, § 47 (*d*), is not an appropriation for purposes of art. 48 it is not necessary to consider whether an initiative petition may repeal an existing appropriation.[9]

3. *"Reversal of a judicial decision" exclusion.* The plaintiffs contend that, because the petition might have the effect of reversing a trial judge's "final order" regarding an asset forfeiture by retroactively applying a heightened standard of proof on appeal, it falls within the "reversal of a judicial decision" exclusion of art. 48, The Initiative, Part II, § 2.[10] The

---

[9]The plaintiffs' reliance on *Gilligan* v. *Attorney Gen.*, 413 Mass. 14, 19 (1992), is misplaced. That case involved an initiative petition that imposed a new excise tax on certain tobacco products not formerly subject to such a tax, with the proceeds of the new tax to be deposited into a newly created fund. See *id.* at 15. Monies deposited in the fund would be expended, subject to appropriation, for a variety of health and tobacco-related educational programs. See *id.* The *Gilligan* plaintiffs contended that crediting excise revenue into a newly created fund constituted an appropriation or, alternatively, that the modification of an existing revenue distribution scheme constituted a prohibited appropriation. See *id.* at 17, 19. The *Gilligan* court held that the initiative's routing of new excise revenue into a new fund would not be an appropriation but did not reach the plaintiffs' alternative argument because we held that the petition did not modify the existing revenue distribution scheme. See *id.* at 17-18. We did not consider whether the existing scheme was an appropriation.

[10]Section 15 of the measure reads: "This act shall not apply to any convictions entered, sentences imposed or asset forfeitures finally adjudicated prior to the effective date of this act" but that "[o]n or after the effective date of this act, the provisions of this act shall apply to (a) all funds derived from proceedings under section 47 of chapter 94C . . . irrespective of when such proceedings . . . may have been commenced."

Under current law, real property "used in any manner or part, to commit or facilitate the commission" of a crime under G. L. c. 94C may be subject to forfeiture. G. L. c. 94C, § 47 (*a*) (7). Under the proposed law, only real property "used in any manner that is not merely incidental to the commission or the facilitation of the commission" of a crime under that chapter is subject to forfeiture. Also, under current law a district attorney or the Attorney General may initiate a forfeiture proceeding if it can be shown that there is "probable cause" to believe the property or asset is subject to forfeiture under the chapter. G. L. c. 94C, § 47 (*d*). The proposed law would allow the Commonwealth to proceed only on "clear and convincing evidence."

term "judicial decision," as it appears in art. 48, has a narrower meaning than that which plaintiffs urge us to adopt.[11]

A constitutional amendment should be "interpreted in the light of the conditions under which it . . . [was] framed, the ends which it was designed to accomplish, the benefits which it was expected to confer and the evils which it was hoped to remedy." *Tax Comm'r* v. *Putnam*, 227 Mass. 522, 524 (1917). "Its words are to be given their natural and obvious sense according to common and approved usage at the time of its adoption," although the historical context should not "control[] the plain meaning of the language." *General Outdoor Advertising Co.* v. *Department of Pub. Works*, 289 Mass. 149, 158, appeals dismissed, 296 U.S. 543 (1935), and sub nom. *Brink* v. *Callahan*, 297 U.S. 725 (1936) (construing art. 50 of the Amendments to Massachusetts Constitution). See *McDuffy* v. *Secretary of the Executive Office of Educ.*, 415 Mass. 545, 558-559 (1993). Hence we turn to the Debates on the Constitutional Convention for guidance to determine the subject matter and scope of this art. 48 exclusion. See *Cohen* v. *Attorney Gen.*, 357 Mass. 564, 572-579 (1970) (examining debates in order to interpret "law" or "laws" as used in art. 48).

Article 48 excludes from the initiative process any "measure" that "relates to . . . the appointment, qualification, tenure, removal, recall or compensation of judges; or to the reversal of a judicial decision; or to the powers, creation or abolition of courts." Art. 48, The Initiative, Part II, § 2. "Measure" refers to both constitutional amendments and laws. *Id.* at § 1. Notwithstanding the adoption of this single term, providing a mechanism by which the people could directly amend the Constitution drew much more fire from the article's opponents than did the similar mechanism for the popular enactment of a statute. See 2 Debates in the Massachusetts Constitutional Convention 1917-1918, 270 (1918) (remarks of Mr. Powers: "I have taken all the time I ought to take in the discussion of this

---

[11]Because we decide that the subject of the petition does not fall within the "reversal of a judicial decision" exclusion, we need not reach the plaintiffs' additional argument that the measure would impermissibly reverse decisions of the trial court which may be pending on appeal at such time that the measure passes.

Moreover, in the event the measure is passed, it would be open to the Commonwealth to challenge the retroactive application of the heightened standard of proof to orders on appeal in a separate action. See *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, 421 Mass. 1, 3 (1995).

phase of the case [regarding the power to amend the Constitution]. I want to say just one word upon the other phase . . . the question of initiating laws. I do not care very much about that").

Proponents and opponents of the article were joined in their desire to protect the Supreme Judicial Court's power to declare statutes unconstitutional, but proponents saw the petition as a way to give the people a mechanism to respond to such decisions. By way of example, proponents repeatedly cited New York's Workmen's Compensation Act which had been struck down as unconstitutional by that State's highest court. On the people's urging, the New York Legislature submitted a constitutional amendment that permitted a workers' compensation law to become effective. Proponents argued that if our Legislature were, in similar circumstances, to decline to pass a constitutional amendment, art. 48 would enable the people both to propose such amendment on their own and, if successful, to enact the desired statute. See id. at 413-414, 739 (remarks of Mr. Walker).

The Supreme Judicial Court's power to declare statutes unconstitutional was, for many at the convention, a necessary and potent power that required an independent, appointed judiciary. Id. at 789-797. Passage of the article heightened concerns that a clamor for the removal of judges or for an elected judiciary would result from a court's declaring unconstitutional a law that the people themselves had enacted. See id. at 794 (remarks of Mr. McAnarney). It was largely this concern for the independence of the judiciary that informed the adoption of this general exclusion. See id. at 970-980 (remarks of Mr. O'Connell, arguing against the need for language protecting the judiciary).

The "recall" of "judicial decision[s]," as it was originally phrased,[12] became a part of this broad exclusion designed to protect the integrity of the judiciary, but the phrase itself was not heavily debated. What little debate there was on this issue makes clear that the delegates understood the phrase to refer to Theodore Roosevelt's controversial 1912 proposal by that name. See id. at 191, 228, 229. As used by Mr. Roosevelt, the phrase described the situation in which a State court sets aside a statute as unconstitutional and the people are given the opportunity to

---

[12]The change from "recall" to "reversal" was a matter of editing that was deemed to have made "no change in meaning." 2 Debates, supra at 959.

reinstate the same law, notwithstanding the court's declaration of its unconstitutionality.[13]

The grave concerns of the delegates for the independence of the judiciary, the origin of the phrase, the lack of debate on the phrase itself, and the purposes of art. 48 as a whole lead us to agree with the Attorney General's position on this matter. By excluding from the initiative process those petitions that "relate[] . . . to the reversal of . . . judicial decision[s]," the constitutional convention intended no more than to prevent a statute, declared unconstitutional by a State court, from being submitted to the people directly and thereby reenacted notwithstanding the court's decision. Citizens may overrule a decision based on State constitutional grounds, but may do so only by constitutional amendment. The overly broad reading urged by the plaintiffs ignores the historical context of the article and would effectively eviscerate the popular initiative by excluding all petitions relating to statutes that a court had already applied if enactment might result in a different decision.[14] Cf. *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 226 (1981). As the petition before us does not attempt to reenact a provision of the General Laws that has been invalidated on constitutional grounds, we hold that the petition does not relate to the reversal of a judicial decision and is therefore not excluded by art. 48.

4. *Related or mutually dependent subjects.* The plaintiffs contend that the various provisions of the petition do not relate to a "common purpose." The subjects of an initiative petition must be "related or . . . mutually dependent." Art. 48, The Initiative, Part II, § 3. We have not construed this requirement narrowly nor demanded that popular initiatives be drafted with

[13]See Ransom, Majority Rule and the Judiciary 107-118 (1912). The author discusses Theodore Roosevelt's use of the "catch-phrase 'the recall of judicial decisions on constitutional questions,' " its context and intended breadth. He explains that it "has nothing to do with [the reversal of] 'decision' or judgment in any suit." *Id.* at 113. Rather, as stated by Mr. Roosevelt himself, it referred only to "a certain class of cases involving the police power, when a State court has set aside as unconstitutional a law passed by the legislature for the general welfare, the question of the validity of the law . . . [should] be submitted . . . [to] the people . . . [because] the courts should not be allowed to reverse the political philosophy of the people." *Id.* at 114.

[14]We leave undecided whether the exclusion under art. 48 is limited to the constitutional review of a statute by the State's highest court or if it includes a similar review by any State court.

strict internal consistency. See *Opinion of the Justices*, 309 Mass. 555, 560-561 (1941) (petition, purpose of which was to eliminate criminal liability for physicians who provided contraceptive care to married persons, did not fail relatedness test because it also added protection for "teaching in chartered medical schools" and "publication or sale of medical treatises"). We have, instead, required only that the subjects of a petition have a "common purpose." *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth, supra* at 219.

The plaintiffs cite only one instance where we have rejected an initiative petition on these grounds. See *Opinion of the Justices*, 422 Mass. 1212, 1220-1221 (1996). In that case we held that a provision granting the Inspector General access to records held by the commissioner of veterans' services did not "relate in any meaningful way to improving legislative accountability," the stated purpose of the initiative. See *id.* at 1221.

By contrast, the provisions of the petition before us are related to a single, common purpose. All provisions of the petition relate directly or indirectly to expanding the scope of the Commonwealth's drug treatment programs and, as the Attorney General aptly describes it, "fairly" funding those programs. To that end, the various provisions of the petition expand the class of individuals entitled to diversion into the Commonwealth's drug treatment programs, provide a source of funds, "fairly" obtained, for those programs, and direct the development of drug abuse prevention programs. Initiative Petition 99-10, §§ 2, 4, 9, 10. The plaintiffs' disagreements with the petition's purpose, the methods chosen to achieve that purpose and the possible effects on the criminal prosecution of the Commonwealth's drug laws notwithstanding, the petition satisfies the relatedness requirement of art. 48.

5. *Requirement that petition propose a law.* The plaintiffs object to what they describe as the failure of the petition to propose a law, because, in their view, the proposed definition of the term "[d]rug dependent person" is fatally flawed. Among the limitations placed on the citizenry's power to enact measures under art. 48 is the limitation that an initiative petition be either a "constitutional amendment" or "law." An initiative petition is not the proper vehicle for enacting measures other than constitutional amendments or laws. See *Paisner* v. *Attorney Gen.*, 390 Mass. 593, 601 (1983) (petition seeking to revise internal legislative procedures excluded under art. 48); *Cohen* v.

*Attorney Gen.*, 357 Mass. 564, 578 (1970) (petition seeking popular vote on whether to call constitutional convention excluded under art. 48). Although we have avoided a precise construction of the term "law" for purposes of art. 48, we have described it as including a measure with binding effect, or as importing "a general rule of conduct with appropriate means for its enforcement declared by some authority possessing sovereign power over the subject; it implies command and not entreaty." *Opinion of the Justices*, 262 Mass. 603, 605 (1928). See *Cohen* v. *Attorney Gen., supra* at 570 n.4.

The petition would amend the current definition of the term "[d]rug dependent person" appearing in G. L. c. 111E, § 1, to include individuals "at risk of becoming drug dependent."[15] This definition, the plaintiffs contend, is "circular," "mystifying," and "eviscerates the current definition" under the statute. Neither the petitioners' skill at legislative drafting, the potential constitutional infirmities of an arbitrary or vague statute, nor the potential effects of a measure on current law are reviewable matters under art. 48. The plaintiffs' argument that "a statutory scheme that demands arbitrary enforcement by providing no guidance to those who must administer it states no law" misconstrues the constitutional requirements for the enactment of legislation by the people or the Legislature. The Attorney General's review of proposed legislation is limited to whether the petition involves an excluded matter under art. 48. See *Associated Indus. of Mass.* v. *Attorney Gen.*, 418 Mass. 279, 290 (1994). We have no authority to halt the enactment of legislation on the ground that it might, in the abstract, be unconstitutional. See *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 247 (1946) ("The people, acting by means of the initiative, like the General Court, can enact measures that violate the fundamental and supreme law of the Constitution . . . [b]ut no court can interfere with the process of legislation . . . before it is completed, to prevent the possible enactment of an unconstitutional measure"). Petition 99-10 does, on the

---

[15]The petition would define the term "[d]rug dependent person," as "a person who is unable to function effectively and whose inability to do so causes, or results from, the use of a drug other than alcohol, tobacco or lawful beverages containing caffeine, and other than from a medically prescribed drug when such drug is medically indicated and the intake is proportioned to the medical need, *or a person who is at risk of becoming drug dependent, as defined herein.*" The italicized portion would be the only change to the definition.

whole, state a "general rule of conduct with appropriate means for its enforcement" that, if approved by the voters, will have been enacted "by some authority possessing sovereign power over the subject." *Opinion of the Justices*, 262 Mass. at 605. The Attorney General correctly certified the petition, as it does propose a law for purposes of art. 48.

6. *Diversion of Federal funds.* The plaintiffs argue that § 11 of the proposal, which provides that the Commonwealth's share of assets forfeited under Federal drug laws shall be deposited in the drug treatment trust fund, is preempted by Federal law, unconstitutional as a violation of the supremacy clause and therefore beyond the legislative power granted the people under art. 48. As noted in Part 5, *supra*, constitutional review of an initiative petition is limited to whether a petition includes an excluded matter under art. 48. All other constitutional challenges must be brought after a petition is enacted. See *Bowe* v. *Secretary of the Commonwealth, supra*; *Horton* v. *Attorney Gen., supra*, at 513-514.

7. *Summary of the petition by the Attorney General.* Finally, we consider plaintiffs' argument that the Attorney General's summary "is inaccurate and misleading." The plaintiffs take particular issue with the omission of certain details about the proposal's possible effects on current law.

As originally adopted, art. 48 required the Attorney General to prepare a description of each initiative petition for the ballot. The length, accuracy, and degree of detail of the required description was deemed to be "cumbersome," *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 324 (1951), hence, the article was amended in 1944 to require that the Attorney General draft a "fair and concise summary" of each petition. See Art. 48, The Initiative, Part II, § 3, as amended by art. 74, §§ 1, 4. While this amendment has been interpreted as having "relaxed" the requirements under the original article, *Bowe* v. *Secretary of the Commonwealth, supra* at 243, we have held that each component of the term, "fair and concise summary" must be satisfied: there must be a real summary as opposed to a mere statement of the petition's general design; the summary must be fair, i.e., "it must not be partisan, colored, argumentative, or in any way one sided"; and the summary must be concise such that the average voter might understand the sum and substance of the initiative within the limited confines of the voting booth. *Sears* v. *Treasurer & Receiver Gen., supra.*

The Attorney General's judgment about what constitutes a fair and concise summary of a petition is entitled to a certain degree of deference. See *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth, supra* at 226-231 & n.18. There, the plaintiffs challenged the enactment of "Proposition 2½," the petition that capped municipalities' tax assessments on real and personal property at two and one-half per cent of the property's fair cash value. See *id.* at 230 n.18. Among the plaintiffs' objections was the omission from the summary that a simple majority vote would be sufficient to lower a city or town's tax base to below two and one-half per cent.[16] See *id.* at 231-232. While this change "obviously would be a substantive change in the law," this particular provision did not constitute a significant part of the initiative as a whole and, therefore, its omission was within the reasonable discretion of the Attorney General. *Id.* at 232.

The plaintiffs raise two objections to the present summary. First, they argue that the diversion of assets forfeited as a result of violations of Federal drug laws into the drug treatment trust fund is a "main feature of the measure" that should have been included in the summary because it may violate Federal law. The Attorney General is not required to conduct a comprehensive legal analysis of the measure, including possible flaws. All the Constitution demands is a summary. It is presumed that public debate will educate the electorate as to the matters the plaintiffs highlight.

The plaintiffs further contend that the summary fails to inform voters that, in their view, the petition would result in a "de facto decriminalization of enumerated drug laws." The plaintiffs draw our attention to the theoretical possibility that three distinct factors — the exercise of a judge's discretion under G. L. c. 111E as described above, the petition's potentially expansive definition of the term "drug dependent person," and its repeal of G. L. c. 111E, § 10, twenty-fifth par. (prohibiting diversion of individuals indicted under G. L. c. 94C, §§ 32-32G) — could combine to permit repeat drug dealers to avoid prosecution.[17] Viewed from the perspective of law enforcement agencies, such

---

[16]Under current law, such a decision could only be made by the local appropriating body.

[17]We note that one of the factors a judge may consider is whether "the defendant is charged for the first time with a drug offense not involving the sale or manufacture of dependency related drugs, and there are no continu-

a change in the substantive law is, understandably, significant. Viewed in the context of the petition as a whole, however, this provision does no more than support the petition's main goal of expanding the scope of the Commonwealth's drug treatment program by providing avenues through which more individuals might gain access to treatment. Again, public debate will provide the electorate with the opportunity to decide whether this petition will have the practical effect of "decriminalizing" drug dealing. We conclude that the summary prepared by the Attorney General meets the requirements of art. 48.

We remand the case to the county court for the entry of a judgment declaring that the Attorney General's certification and summary of this petition are in compliance with the requirements of art. 48. The Secretary of the Commonwealth shall take the appropriate steps to have the measure placed on the ballot in the upcoming State election.

*So ordered.*

---

ances outstanding with respect to the defendant pursuant to this section." G. L. c. 111E, § 10, ninth par. The petition does not propose to amend this provision.